## UTSEY v. HIOTT.

1. The legislature has the right to pass laws which affect only certain localities and classes; but an act excepting certain persons from an exemption granted to others of the same class in the same territory, is unconstitutional and void.
2. Under the general stock law of 1882, all persons in the State were required to keep their stock enclosed. Under the act of 1887 (19 *Stat.*, 1002), a certain portion of Colleton County was designated as a territory that should be exempt from the operations of the general stock law "provided those owning real estate in Colleton County, who have conformed to the general stock law, shall not in any way be affected by this act." *Held*, that this proviso was unconstitutional, because it excepts from the operations of the act certain persons of the same class and locality as others who are affected by it. Conformity or nonconformity to a prior law did not justify the distinction attempted.
3. And as the proviso is so connected with the body of the act that the act itself would not have been enacted without the proviso, the whole act must be declared void on account of the unconstitutionality of the proviso.
4. The plaintiff was entitled under the general stock law to recover damages to his unenclosed land, caused by defendant's stock, in the territory attempted to be exempted by this void act, without regard to whether or not the plaintiff had previously conformed to the general law.

Before PRESSLEY, J., Colleton, June, 1888.

This was an action by W. L. Utsey against Josiah Hiott, sr. The decree of the Circuit Judge was as follows:

By section 1184 of General Statutes, all owners of stock are prohibited from letting them wander outside their own land, and they are liable to pay damages to persons upon whose land the wandering stock may trespass. The stock of respondent in this case trespassed on the land of appellant, and he sues to recover three dollars for penning said stock, as allowed by the said stock law. Respondent pleads the act of 1887, which exempts the territory where he resides from the operation of the general law. Appellant claims that by a proviso in said act he still has the protection of the general stock law, as one who has previously conformed to it. The trial justice decided that he had not conformed to that law, and was therefore not entitled to protection under it. Judgment was therefore in favor of respondent.

The testimony in the case was that appellant had, under the general stock law, cultivated his fields without fences, and during the crop season had sent his stock out of the neighborhood under the charge of some one employed to take care of them. After the crops of his neighborhood were gathered, his stock were brought home, and he and all, or nearly all, his neighbors allowed their stock to pasture at large during the winter. One or two persons who objected to this practice penned some of his stock and he paid the penalties. In my judgment this proves a substantial conformity by him to the general stock law. It does not require any one to keep his stock penned. He only must not allow them to trespass, but the law does not exact of him entire, complete success in the means he uses to that end. If nothing but universal success in the efforts to prevent trespass be conformity to the stock law, then very few persons have conformed to it. Gates may be left open, fences may be broken through, or be maliciously burned or laid down to let out the fenced cattle. These and other matters may cause trespass by the stock of any one who is conforming to the stock law, and so I hold that appellant has conformed to that law and is entitled to be protected under it. I therefore give judgment in favor of appellant for three dollars and all costs, and remand it to the trial justice for execution.

As to the question whether said act of 1887 be constitutional, the respondent contends that it cannot be raised by the appellant, because in this case he himself claims the benefit contained in the proviso of said act. That ground is well taken, if my decision that he is entitled to that benefit shall be finally sustained. But if appeal shall be made in the case, then its importance requires that all the questions involved shall be at one time before the Appeal Court. To that end only I now pass upon the validity of the said act.

Appellant contends that it cannot operate equally upon all persons in the same business, as owners of stock and cultivating crops, who are within the same territorial limits exempted by said act from the general stock law. Two of the boundaries of the said territory are navigable rivers, and no objection is made to them. But the east boundary is a railroad and extends many miles from the Combahee River to the Edisto. The act makes

no provision for any fence to separate this exempt territory from that on the east side of said boundary, which is still under the operation of the general stock law. And so, also, the west boundary of the exempt territory is an "imaginary line," without anything thereat to separate the stock law territory from that intended to be exempted under the said act 1887. So also there are three cases now before me, and doubtless many others in expectancy, which show that there are persons here and there scattered over the exempt territory which, by the proviso of said act, are yet under the operation of the general stock law.

Under such circumstances I cannot perceive that said act can possibly be made to operate equally on persons in the same business within the exempt territory. It is worse than shadow without substance. The supposed exemption to persons within the territory along the boundary lines actually doubles their burdens. The effect is to compel them to pay the penalty if their stock shall wander across the boundary line, and also to fence their cultivated fields as a protection against stock within the exempt territory, but further inward from said boundary. And this same result follows all over the exempt territory wherever there be any one who, under said proviso, has the benefit of the general stock law.

But, even supposing said act to operate unequally, respondent nevertheless relies on the case of *State* v. *Columbia* (6 S. C., 1), as maintaining that it is not unconstitutional. I do not so understand that case. It concerned a law supposed to operate unequally upon persons in different lines of business, and that is not at all the issue in this case.

My judgment is, that the said act of 1887 does operate unequally upon the persons within its territorial limits and the same business, and is therefore unconstitutional and void.

*Mr. W. B. Gruber*, for appellant.

*Messrs. W. Perry Murphy* and *A. S. Farrow*, contra.

March 14, 1889. The opinion of the court was delivered by
MR. JUSTICE McGOWAN. From the "agreed Case" it appears

that both the plaintiff (respondent) and the defendant (appellant) reside within the territorial limits exempted from the operations of the general stock law by act of 1887, "To exempt certain portions of Colleton County from the operation of chapter XXVII., title X., General Statutes, in relation to the general stock law" (19 *Stat.*, 1002); that in April, 1888, one of the defendant's cattle wandered upon the cultivated lands of the plaintiff, and was seized by him while so trespassing, under the provisions of the general stock law, and claim was made for seizure and damages. Thereupon the defendant went before a trial justice and gave bond for the expenses of seizure and damage, should any be awarded, and retook his property. Suit was thereupon instituted by the plaintiff to recover the expenses of seizure and damages under the general stock law. One of the counts in the complaint also alleged three dollars damage at common law, and prayed judgment thereon.

It appeared that the plaintiff cultivated his crops without enclosure. During the summer months his cattle were placed in charge of persons residing in other neighborhoods, within the territorial limits exempt by act of 1887. While in charge of these persons, who were paid for their trouble, the cattle roamed at large and were sometimes impounded by persons upon whose lands they trespassed, and the plaintiff paid the costs and damages. In the fall plaintiff took his cattle home and allowed them to graze in his fields. Later, when the crops of the neighborhood were harvested, the cattle were permitted to roam at large. One or two persons residing in the neighborhood objected to this and impounded plaintiff's cattle, and he paid the costs and damages. Nearly all his neighbors allowed their stock to pasture at large during the winter months. The practice of the plaintiff here described embraced that period of time intervening between the general stock law (1882) and the act of 1887.

Under these circumstances the trial justice gave judgment in favor of the defendant and dismissed the complaint, upon the ground that the plaintiff, not having "conformed to the general stock law," could not claim the benefit of the proviso to the exempting act (1887), which declares that "those owning real estate in Colleton County, who have conformed to the general stock

law, shall not in any way be affected by the operations of this act." Appeal was taken to the Court of Common Pleas, and Judge Pressley, holding that the practice of the plaintiff as to the management of his cattle was "a substantial conformity to the general stock law," reversed the judgment of the trial justice, and gave the plaintiff judgment for $3 and costs. He also held that the act of 1887, "to exempt certain portions of Colleton County from the general stock law" (19 *Stat.*, 1002), operates "unequally upon the persons within its territorial limits and the same business, and is therefore unconstitutional and void."

From this order and judgment the defendant appeals to this court upon the following exceptions: "I. For that his honor erred in holding that the respondent (plaintiff) had proved a conformance to the general stock law. II. For that his honor erred in holding that the act of 1887 (to exempt certain portions of Colleton County from the operation of the general stock law) was in violation of article I., section 12, of the Constitution of South Carolina, and therefore unconstitutional and void. III. For that his honor erred in refusing to hold that if the proviso of said act of 1887 was unconstitutional, that the proviso alone was unconstitutional, and the body of the act valid."

The law commonly known as the general stock law, in order to secure parties in cultivating their crops without fences, makes it unlawful for the owners to allow cattle to roam at large. The plaintiff lives in a part of Colleton County which has been exempted by act of the legislature from the operations of the stock law, and yet the seizure of the defendant's cattle and his action for the expenses of seizure and damages are founded on the provisions of the general stock law. At first view this would seem inconsistent, but it arises in this way: upon the passage of the general stock law (1882) which prohibited cattle from roaming at large, it seems that some persons in Colleton County conformed to it by removing their fences and enclosing their cattle, while others did not do so. Afterwards (1887) the legislature passed a law exempting a certain portion of Colleton County from the operation of the stock law; and in order to protect those within that territory, who had "conformed" to the general law of 1882, a proviso was inserted in the exempting act, as follows: "Pro-

vided, those owning real estate in Colleton County, who have conformed to the general stock law, shall not in any way be affected by this act;" that is to say, the stock law was not repealed, but still left in force, *as to such persons.*

The plaintiff rested his case in the first instance on this proviso, claiming that he was one of those within the exempted territory who had "conformed" to the stock law, and therefore was entitled to all the rights and benefits conferred by that law. It was, however, insisted on the other side that, as matter of fact, he was not one of those who had "conformed;" but if he was, the proviso itself was and is unconstitutional and void, as being repugnant to section 12, article I., of our Constitution, which declares that "no person * * * shall be subjected in law to any other restraint or disqualification, in regard to any personal rights, than such as are laid upon others under like circumstances," and as also in conflict with the 14th amendment of the Constitution of the United States, which, among other things, declares that "no State * * * shall deny to any person within its jurisdiction the equal protection of the laws." To this it was replied that if the proviso is void, that must necessarily affect and avoid the whole exempting act, leaving the parties simply under the provisions of the general stock law.

Is the exempting act (1887) unconstitutional, either in whole or in part? We assume that the local character of the act does not make it necessarily unconstitutional. While there may be some just objections to local laws in general, it is well established that "the authority that legislates for the State at large, must determine whether particular rules shall extend to the whole State and all its citizens, or, on the other hand, to a subdivision of the State or a single class of its citizens only. The circumstances of a particular locality or the prevailing sentiment in that section of the State may require or make acceptable different police regulations from those demanded in another. The legislature may therefore prescribe different laws of police in each distinct municipality, provided the State constitution does not forbid. These discriminations are made constantly: and the fact that the laws are of local or special operation only is not supposed to render them obnoxious in principle. * * * If the laws be otherwise

unobjectionable, all that can be required in those cases is, that they be general in their application to the class or locality to which they apply; and they are then public in character, and of their propriety and policy the legislature must judge." [1] And as Mr. Justice McIver said in the case of *State* v. *Berlin*, 21 S. C., 296 : "The whole matter is well summed up in a note on the same page of Cooley's Constitutional Limitations, (390) in the following words : 'To make a statute a public law of general obligation, it is not necessary that it should be equally applicable to all parts of the State; all that is required is, that it shall apply equally to all persons within the territorial limits described in the act.'" See *State* v. *Hayne*, 4 S. C., 410; *State* v. *Columbia*, 6 *Id.*, 1; *Kaminitsky* v. *Railroad Company*, 25 *Id.*, 53.

The legislature, then, having the right to pass laws which affect only certain localities and classes, the question arises here, whether it was within its constitutional power not only to make an exemption from the operation of the general stock law in a particular locality, rather vaguely defined, in part at least, by an "imaginary line," but to go further, and make an exception of certain individuals within that exemption, simply on the ground that they had "conformed" to a previous general law upon the subject. So far as appears in the case, all the persons living within the exempted territory belonged to the class of farmers, cultivating the soil and raising stock as a business, and in their calling were in no way limited to any particular mode of conducting their operations, except that they should not violate the law. Some, however, did not conform to the law, and that course put their farms into condition, in some respects, different from that of those who did "conform" to it, and they removed their fences. Did such difference in the condition of the farms in the exempted territory divide the owners into two classes, so separate and distinct as to authorize the legislature to make rules and regulations, as to one class, entirely different from those applicable to the other ? We cannot think so.

All the persons interested were not only living in the exempted territory, but were distinctively farmers, the difference in the

---

[1] *Cool. Const. Lim.* (2nd edit.), p. 390.

condition of their respective farms, claimed to exist, being only that produced by the conduct of those who did not "conform" to the law, and which, we cannot think, was sufficient to place them in such distinct "classes" as to justify class legislation in favor either of those who "conformed" or of those who did not conform to the general stock law. As we understand it, previous conduct does not authorize partiality in the law. An act, excepting from its operation all good men, would surely be in conflict with the absolute equality required by the constitution. "A statute would not be constitutional which * * * should select particular individuals from a class or locality and subject to peculiar rules, or impose upon them special obligations or burdens, from which others in the same locality or class are exempt. * * * Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments. Those who make the laws are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plough. This is a maxim in constitutional law, and by it we may test the authority and binding force of legislative enactments." *Cool. Const. Lim.*, 483, 484, and notes. The line seems to be drawn at "classes," and some of the cases (Missouri), with the force of antithesis, put it thus: "A statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons, or things of a class, is special."

Now, simply as an illustration, we suppose that there is no doubt that the first proviso of the act under consideration (1887) would fall under this prohibition as to persons "of a class"; for it expressly and in terms excepts from the exemption enacted the lands of certain persons by name. viz., James L. Gantt, the estate of W. M. Brailsford, and Theodore D. Jervey; and we think the same principle must apply to the second proviso, which excepts those owning real estate in Colleton County, "who have conformed to the general stock law." We entirely understand

and appreciate the object which was in contemplation when the legislature inserted the proviso in question. The intention manifestly was, while making the exemption, to protect those within the exempted territory, who, as law-abiding citizens, had "conformed" to the general law upon the subject. But without regard to the laudable purpose, we do not think that the legislature could except from the exemption certain farmers while declining to exempt others living in the same territory. According to our view, the proviso makes a distinction between citizens who were all farmers, living in the same territory and under like circumstances, which is in conflict with the fundamental law, and we are therefore constrained to hold that it is unconstitutional and void.

But we think that, as a necessary consequence, makes the whole act of 1887 void. It is true that a part of an act may be declared unconstitutional, and the other portions remain unaffected, but that must always depend upon the nature of the connection between the bad part and the other parts of the act. "When, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other.   *   *   * And if they are so mutually connected with and dependent on each other as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently—then, if some parts are unconstitutional, all the provisions · which are thus dependent, conditional, or connected, must fall with them.   *   *   * It has, accordingly, been held that where a statute annexed to the city of Racine certain lands, but contained an express provision that the lands so annexed should be taxed at a different and less rate than other lands in the city—the latter provision being held unconstitutional, it was also held that the whole statute must fall, inasmuch as such provision was clearly intended as a compensation for the annexation." *Cool. Const. Lim.*, 215, 216, 217, and notes.

In this case, the two sections of the act are upon the same subject, and essentially connected. Indeed, the proviso was only made necessary by the exempting provision. The legislature evidently intended that the act should take effect as a whole, and we are not authorized to presume that they would have passed the one without the other—the exemption without the exception. We think it would defeat the intention of the law-makers to erase the proviso and leave the exempting clause, within the particular territory, without exception or qualification. It is not the proviso alone that is objectionable, for, in itself, it is but the re-affirmation of the stock law as to certain persons; but the difficulty springs from its connection with the exempting clause. It is the two together which makes the inequality under the law.

Besides, the inequality is intensified here because of the peculiar character of the stock law, which confers rights and imposes obligations so reciprocal in their nature, that the benefits supposed to be afforded by it cannot be enjoyed or practically enforced unless its operations are made general in the same community. One man may nominally have the right to cultivate his crop without fences, but, assuredly, that right would be worse than useless to him unless his neighbors were required to keep their stock from trespassing. This seems to be one of those cases where there cannot be a perfect individual right, but in order to be beneficial it must be general. The Circuit Judge well expressed it when he said, that, "Under such circumstances, I cannot perceive that the act can possibly be made to operate equally on persons in the same business within the exempt territory. It is worse than shadow without substance. The supposed exemption to persons within the territory along the boundary lines actually doubles their burdens. The effect is to compel them to pay the penalty, if their stock shall wander across the boundary line, and also to fence their cultivated fields as a protection against stock within the exempt territory, but further inward from said boundary. And this same result follows all over the exempt territory, wherever there be any one who, under said proviso, has the benefit of the general stock law," &c.

With a strong consciousness of the fallibility of human judgment, we hesitate to declare an act of the legislature—a co-ordi-

nate department of the government—unconstitutional and void, and never do so except in the conscientious discharge of what is deemed to be official duty. The view we have taken of the case renders it unnecessary to consider the other questions raised. The act of 1887 being unconstitutional, the parties stand upon their rights under the general stock law of 1882.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.