14987

WINDHAM v. PACE *ET AL.*
BURNEY v. SAME

(6 S. E. (2d), 270)

272

April, 1939.

*Messrs. Nathans & Sinker* and *B. M. Thomson, Jr.,* for appellants,

*Messrs. J. D. Parler, Turner Logan, Jr.,* and *Robinson & Robinson,* for respondents,

December 15, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The Circuit Court refused motions made in behalf of the two defendants in these cases, to change the place of trial from Dorchester County to Charleston County. The record in the lower Court included the complaint and answers, and numerous affidavits submitted by each side, and that Court held that the venue was properly laid under Section 8511, Code of 1932.

The actions were brought by the plaintiffs, who are residents of Dorchester County, to recover damages for personal injuries sustained by them when an automobile in which they were riding, on a public highway in Dorchester County, was struck from the rear by an automobile owned and operated by the individual defendant, Pace, a resident of Charleston County. Pace at the time of the accident was transacting the business of the corporate defendant, a Georgia corporation, which holds a certificate from the Public Service Commission of this State authorizing it to operate a motor vehicle line for the transportation of freight between Charleston, South Carolina, and Augusta, Georgia. The issues are identical in the two cases, and the decision of one case will control the other. The appeals were heard together in this Court. For the sake of convenience they will hereafter be referred to in the singular.

The defendant company, a foreign corporation, maintains offices and has agents in this State only in Charleston County, but transports freight as a motor carrier through Dorchester County.

At the time of the accident one of the motor trucks which the corporate defendant operated, was forced to park on a public highway in Dorchester County on account of tire trouble. The individual defendant, Pace, it is alleged, was

the manager of the Charleston office of the corporate defendant, and at the time his automobile collided with that of the plaintiff he was performing the duty of transporting a wheel and a tire to the disabled motor truck, which was awaiting the arrival of these essential parts before it could proceed on its way.

The issues presented require a construction of Section 8511 as applied to this question: Is Dorchester County the proper venue for the trial of a tort action brought by a resident of that county against an individual who is a resident of Charleston County, and a Georgia corporation, whose only agents and offices in this State are maintained in Charleston County, but which operates its motor freight line as a motor carrier through Dorchester County?

The Circuit Court ruled that the provisions of this section were sufficiently comprehensive to authorize the bringing of the action in Dorchester County, because the duty performed by Pace, the agent of the corporate defendant at the time of the accident, was directly related to its business of carrying freight on the public highway; that Pace was acting within the scope of his authority, and had general supervision and control of trucks transporting cargoes operating from the Charleston office.

Since the recent decisions of this Court in *Tucker v. Ingram,* 187 S. C., 525, 198 S. E., 25, and *Warren v. Smith,* 190 S. C., 8, 1 S. E. (2d), 900, no doubt may be entertained as to the venue of actions brought against non-resident corporations and resident personal defendants. We held in those cases that if a foreign corporation, whether domesticated or not, having an agent and office for the transaction of business in a particular county, is sued in that county with a resident of another county of the State, the case may properly be tried in the county in which the action was brought. If the foreign corporation is sued in a county where it has no agent or place of business, along with a co-defendant who is a resident of another

county of the State, the place of trial should be changed to the county of the residence of the co-defendant.

But Section 8511, under review, enlarged the venue in the case of a motor carrier. It is assailed by the corporate defendant as violating the Fourteenth Amendment of the Constitution of the United States, upon the ground that it denies to non-resident carriers the equal protection of the law, in that it makes an unfair discrimination, in a constitutional sense, between resident and non-resident motor carriers. The statute reads as follows: "The commission shall, in the granting of a certificate, require the applicant to procure and file with said commission liability and property damage insurance, or surety bond with some casualty or surety company authorized to do business in this State, on such motor vehicle or vehicles to be used in the service aforesaid, in such amount as the commission may determine, insuring or indemnifying passengers or cargo and the public receiving personal injury by reason of any act of negligence, and for damage to property of any person other than the assured; such policy or bond to contain such conditions, provisions, and limitations as the commission may prescribe and the same shall be kept in full force and effect, and failure to do so shall be cause for the revocation of such certificate: Provided, however, That said motor carriers shall be responsible for loss or damage to baggage only when checked with the operator of the vehicle: Provided, further, That no applicant for a certificate C shall be required to file a bond not exceeding the sum of one thousand ($1,000.00) dollars: Provided, That in case the owner of the operated motor carrier is a resident of the State or is a domestic corporation, action may be brought against such party in any county through which the motor carrier operated. In case of non-resident or foreign corporations action may be brought in any county of the State: Provided, further, Jurisdiction may be acquired by service of two copies of the summons and complaint upon the secretary of the railroad commission, who shall forthwith trans-

mit one copy by mail to the last known address of the defendant or one of the defendants, if there be more than one."

It will be observed that the law provides in the third proviso that in case the owner of the operated motor carrier is a resident of the State, or is a domestic corporation, then it may be sued only in some county through which it operates, but in case of a non-resident corporation it may be sued in *any* county of the State. The appellants point to this distinction as an unfair discrimination, and assert that it comes under the ban of the Fourteenth Amendment.

In the case of *Power Mfg. Co. v. Saunders,* 274 U. S., 490, 47 S. Ct., 678, 680, 71 L. Ed., 1165, the Supreme Court of the United States, construing an Arkansas statute, held that a foreign corporation is unconstitutionally deprived of the equal protection of the laws by statutes permitting it to be sued in any county in the State (when it has established its right to do business in the State), whether it does business, or is present, or has a representative in the county of suit or not, while actions against domestic corporations and individuals can be brought only in counties where they are found, or do business, or have a representative.

There is no real distinction, we think, between domestic and foreign motor carriers operating under the Act. Both engage in the same form of business; both make similar use of the highways in the State. The classification is clearly arbitrary. It is not based on a real and substantial difference having a reasonable relation to the subject of the particular legislation. The provision of the statute permitting suits to be maintained against foreign corporations in any county of the State, but limiting the place of trial of actions against individuals and domestic corporations to counties through which they operate, manifestly denies the equal protection of the law within the meaning of the Fourteenth Amendment to the Constitution, U. S. C. A. As was said in *Power Mfg. Co. v. Saunders, supra,* "There is no more reason for a statewide venue when the action is against a foreign corporation than when it is against a domestic corporation or

a natural person," so far as the plaintiffs in such actions are affected.

But sustaining the appellant on this ground does not dispose of the case. The unconstitutionality of the statute pertains only to that part of it which allows actions to be maintained against foreign corporations in *any* county of the State. The last sentence of the proviso: "In case of non-resident or foreign corporations, actions may be brought in any county of the state," fairly interpreted, in connection with the other provisions of the statute, means that an action may be brought against non-resident or foreign corporations not only in counties through which they operate, but in any county of the State. This is the unmistakable legislative intention, and as so construed the section is only partially unconstitutional. The action may still be brought against a non-resident or foreign corporation in any county of the State through which as a motor carrier it operates, thus putting it in the same classification with the owner of an operated motor carrier who is a resident of the State or which is a domestic corporation.

It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another part, and if the invalid part is severable from the rest, the portion which is constitutional may stand, while that which is unconstitutional is stricken out and rejected. *Townsend v. Richland County,* 190 S. C., 270, 2 S. E. (2d), 777; *Thomas v. Macklin,* 186 S. C., 290, 195 S. E., 539; *State v. Johnson,* 76 S. C., 39, 56 S. E., 544, 11 Ann. Cas., 721; *Utsey v. Hiott,* 30 S. C., 360, 9 S. E., 338, 14 Am. St. Rep., 910, 11 Am. Jur., Sec. 152. And it is generally held that the constitutional and unconstitutional provisions of a statute may be included in one and the same section, and yet may be separable, so that some stand while others fall. 11 Am. Jur., Sec. 152, page 839.

We find no difficulty in holding that the constitutional and unconstitutional portions of Section 8511 are separable.

But the corporate defendant likewise takes exception to the constitutionality of the Act in the form in which we have construed it, as being discriminatory because it singles out individuals and domestic and foreign corporations operating as motor carriers under the Act and permits actions to be maintained against them in counties other than those in which they reside or have an agent and maintain an office, while other individuals or corporations making the same or similar use of the highways of the State, but not operating as motor carriers for hire, may be sued only in the county in which they reside or maintain an office and have an agent.

We do not think this classification is arbitrary or unreasonable, or that it denies the equal protection of the law guaranteed by the Fourteenth Amendment. The classification here is in respect to the venue or place of bringing transitory actions, and in such matters the range of the State's discretion is large.

When the Legislature delegated to the Public Service Commission the power to grant franchises of the kind in question, it doubtless recognized that the continuous and systematic operation of motor vehicles loaded with freight on the highways of the State, would appreciably increase the hazards of others lawfully thereon making a less frequent use of these highways, and that those sustaining injuries should not be forced to a remote forum for the trial of their actions. Doubtless too, the Legislature had in mind considerations of convenience and economy for those who might be plaintiffs in such actions. A difference in classification such as is made by the Act is not regarded as oppressive or unreasonable. It differentiates between the use of highways as a business for private profit and other uses thereof for pleasure, convenience, or as an incident to business. See *Bain Peanut Co. v. Pinson,* 282. U. S., 499, 51 S. Ct., 228, 75 L. Ed., 482, and *Hicklin v. Coney,* 290 U. S., 169, 54 S. Ct., 142, 78 L. Ed., 247, affirming, *State ex rel Coney v. Hicklin,* 168 S. C., 440, 167 S. E., 674.

Where there is a reasonable and not an arbitrary classification, different classes of persons or corporations may be subjected to different rules as to the venue of actions brought against them. We think this is well within the legislative power. Nor does this holding conflict with the Nebraska case cited by appellant. *Schwarting v. Ogram,* 123 Neb., 76, 242 N. W., 273, 81 A. L. R., 769.

In the above case the Nebraska Court had under consideration an Act (20-406, Comp. St. 1929) reading, "An action against a railroad company, or an owner of a line of mail stages or other coaches, a bus or trucking company, for an injury to person or property upon the road or line, or upon a liability as a carrier, may be brought in any county through or into which the road or line passes. * * *"

It was held by the Court, in an action arising from the negligent operation of a motor truck of a trucking company, that this statute did not deny the equal protection of the laws to motor carriers, even though other users of the highway could be sued upon causes of action arising out of their use of the highway only in the county wherein they reside. But it was suggested in the opinion of the Court that the statute would be discriminaory unless it was so construed as to limit actions thereunder to those arising out of the operation of the motor carrier service, and by way of illustration it was said that the action contemplated by the statute did not include any kind of suit such as one founded on a note or contract. And this brings us to a contention of the appellants which has been pressed with great earnestness.

The corporate defendant takes the position that Section 8511 should be construed to limit the class of actions referred to therein to those arising only from the operation of motor trucks actually being used in its business, and it contends that this was the intention of the statute.

The point is made clear by recalling that the injury alleged to have been suffered by the plaintiff arose out of a collision between the automobile occupied by him and the

automobile owned and driven by Pace, the individual defendant. The motor truck itself was at the time the accident occurred, stationary on the highway, awaiting a new wheel and tire which were being brought from the City of Charleston by Pace, an agent of the corporate defendant. Since the motor truck was not involved in the collision, the appellant contends that the venue provision of the Act does not apply in this action. In other words, that liability must be confined to actions growing out of the operation of a motor truck used in the transportation of freight, and should not be extended to an action arising from the general conduct of the corporate defendant's business as a motor carrier.

The statute was originally enacted in 1925, and appears as Act No. 170 on page 252 of the Statutes at Large for that year. The purpose of the Act was to provide for the regulation and control of persons, firms, corporations and associations operating or managing motor vehicles used in the business of transporting persons or property for compensation on the improved public highways of this State. As enacted it embraced motor trucks and other motor vehicles operated for the transportation of freight as well as buses or like vehicles used for the transportation of persons. The third proviso of Section 5 of the Act of 1925, which it is asserted is germane to the appeal in the case at bar, contains the venue provision, which, however, relates only to buses. It reads as follows: "Provided, That in case the owner of the *operated bus* is a resident of State or is a domestic corporation, action may be brought against such party in any County through which the *bus line* operates. In case of non-resident or foreign corporations action may be brought in any County of the State." (Italics added.)

It is to be noted that the proviso makes no provision as to the venue of actions against those engaged in the transportation of property. It refers solely to actions arising from the negligent operation of a bus, and allows actions to be

brought against the owner of the operated bus in any county through which the bus line operates.

Section 5 of the original Act was first amended in 1930 (Act No. 792, page 1327 of the 1930 Statutes at Large.). This amendment provides for cargo insurance, but makes no change in the provision which we are now considering. In 1931 the Legislature again amended Section 5 (Act 109, page 144, Statutes at Large for 1931). The amendment struck out the word "bus" in the phrase "operated bus," and also the words "bus line," and inserted in lieu thereof "motor carrier." As amended, the venue provision was incorporated in Section 8511, and reads as follows: "Provided, That in case the owner of the operated motor carrier is a resident of the State or is a domestic corporation, action may be brought against such party in any county through which the motor carrier operated. In case of nonresident or foreign corporations action may be brought in any county of the State   *   *   * ."

It is thus seen that by the amendment of 1931 the range and scope of the Act was expanded. The amended phrase, "the owner of the operated motor carrier," in our opinion, refers to and includes generally the motor vehicle line or service conducted by the carrier.

A "carrier," according to the legal usage of the term, is one who undertakes to transport persons or property from place to place. There is nothing in the amendment to indicate that the Legislature used the words "operated motor carrier" in a restrictive sense to denote a vehicle, whether a bus or a truck, as a carrier of persons or property. Obviously the language relates to the operation of a motor carrier line. Had it been the legislative intent to confine the operation of the Act merely to buses and trucks, the Legislature, we think, would naturally have used the words, "operated bus" and "operated truck." It did not see fit to adopt this limited phraseology, but on the contrary amended the phrase "the owner of the operated bus," so as to read, "the owner of the operated motor carrier."

The language of a statute must be read in a sense which harmonizes with the subject-matter, and accords with its general purpose and object. The purpose of the Act under construction "was to provide for the regulation and control of persons, firms, corporations and associations operating or managing motor vehicles used in the business of transporting persons or property for compensation on the improved public highways of this State." In the quoted declaration emphasis is laid upon persons, firms and corporations which operate or manage motor vehicles, and not upon the vehicles themselves. The declared purpose of the Act gives aid to our construction that the Act, as amended, relates to the general business of a carrier of persons and property upon the public highways.

It is well settled that a legislative body has the power within reasonable limitations to prescribe legal definitions of its own language, and when an Act passed by it embodies the definition, it is generally binding upon the Courts. The Legislature, in Section 8507, Subdivision (d), has defined "motor vehicle carrier" as follows: "The term 'motor vehicle carrier' wherever used in sections 8507 to 8524, means every corporation or person, their lessees, trustees or receivers, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails, used in the business of transporting persons or property for compensation over any improved public highway or streets as hereinafter defined in this State."

We are unable to discern any appreciable difference in meaning between "motor vehicle carrier," as thus defined, and "the owner of the operated motor carrier," as used in the amendment of 1931. One embraces the other.

In construing statutes, words should be given their usual and ordinary meaning, and where the terms of a statute contain no ambiguity, there is no room for construction. There is no rule of interpretation requiring the amended statute to be given a meaning which differs in any degree from that which would have been given it had

the matter of amendment been made a part of the original Act. Hence, unless the contrary intent is clearly indicated, the amended statute is to be construed as if the original statute had been repealed, and a new and independent Act in the amended form adopted. 25 R. C. L., Sec. 291, page 1067, 59 C. J., Sec. 647, page 1096. Under this rule of construction, the amendment becomes a part of the original statute, as if it had always been contained therein. And under this rule, any confusion or misunderstanding as to the paramount intent of the Legislature, by the use of the amended phrase, "the owner of the operated motor carrier," disappears. The quoted phrase leaves, in our minds, no room for argument that it was the legislative intention to make Section 8511 applicable to actions arising out of the general operation of motor carrier lines, as distinguished from the operation of the individual trucks or buses used in the carrier service.

We conclude that the provisions of Section 8511 authorizes the institution of the actions brought by the plaintiffs against the corporate defendant in Dorchester County, and that the lower Court committed no error in refusing to change the venue to the County of Charleston, where the corporate defendant maintains an office and agents.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON concur..