## 18623

In re STATE ex rel. Daniel R. McLEOD, Attorney General, Plaintiff, v. John C. WEST, Lieutenant-Governor of South Carolina; Lovick O. Thomas, Clerk of the Senate of South Carolina; Dexter O'Shields, and Hazel H. O'Shields, James P. Mozingo, Defendants. Ex Parte: Petition of Daniel R. McLeod, Attorney General, State of South Carolina.

(153 S. E. (2d) 892)

*Daniel R. McLeod, Esq., Attorney General,* of Columbia, for *Plaintiff,*

*Messrs. Fulmer, Barnes, Berry & Austin,* of Columbia, for defendants, *John C. West* and *Lovick O. Thomas,*

*Paul M. Moore, Esg.,* of Spartanburg, *for defendants, Dexter O'Shields* and *Hazel H. O'Shields,*

*Messrs. Fulmer Barnes, Berry & Austin,* of Columbia, for defendants, *John C. West* and *Lovick O. Thomas,* in reply.

March 27, 1967.

On Rehearing April 10, 1967.

Per Curiam:

The pronouncement of the Supreme Court of the United States in *Reynolds v. Sims,* 377 U. S. 533, 84 S. Ct. 1362, 12 L. Ed. (2d) 506, that the Constitution of the United States requires the apportionment of membership in both

branches of bicameral state legislatures on a substantially equal population basis, was the death knell of the South Carolina Senate as apportioned under Article III, Section 6, of the Constitution of South Carolina.

In an action brought in the United States District Court by Dexter O'Shields and Hazel H. O'Shields against Robert E. McNair, Governor of South Carolina, *et al.*, the court, after declaring the apportionment of the Senate under Article III, Section 6, to be unconstitutional, has approved as an interim measure one of two alternative plans of reapportionment adopted by the General Assembly of South Carolina, Act No. 743 of 1966. Under this plan, the number of members of the Senate has been increased from 46 to 50.

This action for declaratory judgment has been brought in the original jurisdiction of this Court for the purpose of determining, as a question of state law, whether Article III, Section 6 survives as an effective control of the number of senators, even though its provision for apportionment of one senator to each county has been declared void for conflict with federal law.

We quote Article III, Section 6:

"The Senate shall be composed of one member from each County, to be elected for the term of four years by the qualified electors in each County, in the same manner in which members of the House of Representatives are chosen."

This pithy section was skillfully drafted to accomplish two relevant objectives, *i. e.,* to fix the numerical composition of the Senate as equivalent to the number of counties and to apportion the members on the basis of one senator from each county. The second of these objectives has been stricken for conflict with federal law. The first is not subject to challenge on this ground, and is valid unless it must fall with the second. The issue turns on whether the valid is severable from the invalid without perversion of its meaning.

The rule that a statute may be constitutional in part but unconstitutional in another part, and if the invalid part is severable from the valid, the latter

may stand while the former is declared void, has been of frequent application. The valid and invalid portions may be included in the same section and yet be separable. *Windham v. Pace,* 192 S. C. 271, 6 S. E. (2d) 270; West's South Carolina Digest, Statutes, Key 64.

Logically, the rule should apply to a section of a state constitution which is partially invalid because of conflict with the Federal Constitution. It was so held in *In re Orans,* 15 N. Y. (2d) 339, 258 N. Y. S. (2d) 825, 206 N. E. (2d) 854, where the question was whether the provisions of the state constitution limiting the number of assemblymen were severable from the invalid apportionment provisions. We agree.

One of the basic functions of a state constitution is to provide for the composition of the legislature, including the number and apportionment of members of the two branches. This practice has been consistently followed in South Carolina, and, we are advised, in every other state of the Union. It is reasonable to suppose that the framers of the Constitution of 1895 were aware of this dual aspect of the composition of the Senate and intended to provide for both by Article III, Section 6, albeit in a single sentence. A less sparing draftsman, without changing the meaning of this section, might have written: "The Senate shall be composed of as many members as there are counties. One Senator shall be elected from each county by the qualified electors of that county." If this were the language of Section 6, the severability of the two provisions would be more readily apparent. However, the difference is in form only, and the issue of severability is to be resolved upon substance.

We hold that Article III, Section 6, remains an effective and valid part of the Constitution of this State for the purpose of determining the size of the Senate.

*In re Orans,* 15 N. Y. (2d) 339, 258 N. Y. S. (2d) 825, 206 N. E. (2d) 854, lends strong support to this

conclusion. *In re Advisory Opinion to the Governor, Fla.,* 150 So. (2d) 721, which is cited, *contra,* is not persuasive because the court simply construed a federal court judgment as having "eliminated the limitations provided in the Florida Constitution on the size of the House and Senate," without considering whether such limitations were severable from the apportionment provisions.

### ORDER ON PETITION FOR REHEARING

Following our decision in this case, in which it was held that the Constitution of South Carolina limited the numerical composition of the Senate to 46, a petition for rehearing has been filed seeking a decision as to whether the present General Assembly, notwithstanding a 50 member Senate, may validly perform legislative functions.

Although not originally presented, because of the immediate importance of the question and the vital public interest involved, we think it not only proper, but our duty, to nevertheless decide the question without further procedural formalities or delay.

The situation in which South Carolina finds itself as a result of the pronouncement of the United States Supreme Court in *Reynolds v. Sims,* 377 U. S. 533, 84 S. Ct. 1362, 12 L. Ed. (2d) 506, and the compelled effort of the previous General Assembly of this State to comply therewith is, as far as we can ascertain, without any precedent. We reject, however, the idea that our prior decision in this matter in effect dissolved the legislative body of this State and rendered its acts null and void. The adoption of such a contention would result in untold chaos and confusion, which must be avoided.

The South Carolina Legislature is a body created by the State Constitution, under which all political power is vested in and derived from the people. The members of the present Senate were elected by the people in compliance with a statute providing for a 50 member senate. This statute was adopted by the General Assembly

in good faith prior to our decision. Unless the members thus elected are authorized to serve until the next general election, the people will be deprived for a time of the benefit of representative government to which they are constitutionally entitled.

We, therefore, hold that the present Senate may validily perform the legislative functions of that body until, but only until, the next general election. By this ruling we set at rest all questions under state law, arising out of our previously announced decision, as to the powers, both past and prospective, of the present General Assembly to perform all legislative functions devolved upon that body under the Constitution and laws of this State.