1088

CITY OF WESTMINSTER, Respondent v. BLUE RIDGE ELECTRIC CO-OPERATIVE, INC., Appellant.

(366 S. E. (2d) 611)

Court of Appeals

*Larry C. Brandt,* of *Larry C. Brandt, P.A., Walhalla,* and *Henry F. Floyd,* of *Acker, Acker, Floyd* and *Welmaker,* Pickens, *for appellant.*

*Lowell W. Ross* and *Julian L. Stoudemire,* both of *Ross, Stoudemire & Awde, P.A.,* Seneca, *for respondent.*

Heard Nov. 17, 1987.

Decided Feb. 8, 1988.

CURETON, Judge:

The sole issue in this appeal is whether Act 431, 1984 S. C. Acts 1865, amending Section 58-27-1360, Code of Laws of South Carolina, 1976, should be applied retroactively to bar The City of Westminster's action to acquire facilities owned by Blue Ridge Electric Cooperative, Inc. The trial court held the Act should be applied prospectively and constituted no bar to the City's action. We affirm.

In this action the City seeks to compel a sale to it of electrical facilities owned by Blue Ridge pursuant to Section 58-27-1360, Code of Laws of South Carolina, 1976, The parties submitted the case to the circuit court on an agreed statement of facts. The pertinent facts follow:

> For an number of years, the City has operated an electrical distribution system. Blue Ridge purchased electricity from the City and supplied it to 43 homes in the City and 56 outside the City. The homes which are the subject of this litigation are located in an area which was incorporated into the City of Westminster in 1971.
>
> On December 12, 1978, the City passed an ordinance authorizing it to enter into a sales agreement to purchase an interest in a nuclear-fueled generating facility known as Catawba Nuclear Station. Under the agreement, the City joined nine other municipalities to create the Piedmont Municipal Power Agency (PMPA) which would purchase electricity from Catawba. By entering into the agreement the City agreed to purchase 1.8 percent of Catawba's output.
>
> In entering into the agreement, the City relied on a study of future sales of electricity by it. The study

included in its protection of future sales the current volume of electricity sold to Blue Ridge. The electricity purchased by Blue Ridge to supply the 99 homes represented 5.70 percent of the City's total electricity sales.

On July 1, 1983 Blue Ridge ceased purchasing electricity from the City. Under Section 58-27-1360, as it existed prior to June 6, 1984, cities were empowered to require owners of electrical facilities providing electricity to incorporated and annexed areas of those cities to sell their facilities to the affected cities. Pursuant to this statute, the City gave Blue Ridge notice on April 27, 1984, and again on May 16, 1984, that it was exercising its right to acquire the Blue Ridge facilities.

The city engaged an engineering firm to value the facilities of Blue Ridge who reported in May 1985 that the facilities were worth $172,727.86. Thereafter, the city offered Blue Ridge that sum for its facilities, but the offer was refused. Blue Ridge in turn offered to sell its facilities to the City for $264,468.67.

The loss of the sale of electricity to Blue Ridge will result in lower sales by the City than was projected in the 1978 study.

Act 431, 1984 S. C. Acts 1865, was approved on June 6, 1984. The act amended Section 58-27-1360 to provide that a city must secure an order of the South Carolina Public Service Commission (PSC) finding the service of a utility inadequate, undependable or unreasonably discriminatory before the city could acquire the utility's facilities within its annexed or incorporated area.

Blue Ridge refused to sell its facilities to the City since the PSC had made no finding as required by Act 431. The City then commenced this action to compel Blue Ridge to sell its facilities pursuant to Section 58-27-1360 as the Section existed prior to the 1984 amendment.

The circuit court held the City "acquired vested rights or interests" prior to the effective date of Act 431 "which would be prejudiced by the retrospective application of" the Act. The trial court therefore found the City entitled to acquire Blue Ridge's facilities without securing a PSC order. The court referred the matter to the Master In Equity to determine the value of the facilities.

Blue Ridge argues the circuit court was without authority to refer the matter to the Master to determine the value of the facilities. At oral argument both parties agreed the circuit court had authority to refer the valuation issue to the Master, provided, the Master In Equity strictly complies with Section 58-27-1360 in arriving at just compensation for the facilities. We therefore consider the reference issue moot.

As to the construction of Act 431, Blue Ridge argues the Act repealed the earlier version of Section 58-27-1360 and terminates any proceeding under it which has not been concluded. It relies upon *Independence Insurance Company v. Independent Life and Accident Insurance Company,* 218 S. C. 22, 61 S. E. (2d) 399 (1950). Both *Independence* and the earlier case of *Windham v. Pace,* 192 S. C. 271, 6 S. E. (2d) 270 (1939), stand for the general proposition that an amended statute is to be construed as if the original statute was repealed and a new and independent act in amended form adopted unless there is a contrary intent indicated. *Independence,* 218 S. C. at 33, 61 S. E. (2d) at 404, *Windham,* 192 S. C. at 284, 6 S. E. (2d) at 275. Under this authority, the intent of the legislative body is of concern in construing the application of amended statutes.

Section 58-27-1360 as amended in 1984 clearly conflicts with the earlier version of the statute relative to conditions precedent to the City acquiring a right to proceed against Blue Ridge to acquire its facilities. However, the amended statute does not repeal the right of the City to acquire the facilities.

Act 431 also amended Section 58-27-670, Code of Laws of South Carolina, 1976. *See City of Abbeville v. Aiken Electric Co-op., Inc.,* 287 S. C. 361, 338 S. E. (2d) 831 (1985). That Code section deals with the furnishing of electric service in an area which becomes part of a municipality by annexation or incorporation. Section 58-27-670, both before and after the amendment by Act 431, refers specifically to Section 58-27-1360. These Code Sections may be construed together to determine legislative intent concerning electric service in areas annexed or incorporated into a municipality. The amendment to Section 58-27-670 states, in part, as follows:

> The furnishing of electric service in any area which becomes part of any municipality *after the effective date of this section* (emphasis added), either by annexation or incorporation, ... is subject to the provisions of Sections 58-27-1360 and 33-49-250.

Consideration of the text of Act 431 leads to the conclusion the Legislature intended the amended provisions of Sections 58-27-670 and 58-27-1360 to apply to areas annexed or incorporated after the effective date of the amendments (i.e. June 6, 1984). The stipulated facts in this case indicate the areas involved were incorporated in 1971. Therefore, even though the acquisition of the electric facilities was in progress when Act 431 was passed in 1984 the intent of the Legislature as expressed in the act requires the application of the provisions of Section 58-27-1360 as it existed prior to the amendment. The critical time frame under the legislative scheme is the date of annexation or incorporation and not the date of the acquisition procedure. *See City of Abbeville v. Aiken Electric Co-op., Inc. supra.*

The parties and the trial court focused on the issues of vested rights and procedural versus substantive legislation. Because we find the Legislature expressed its intent regarding the timing of the application of the amendments of Act 431 it is not necessary for us to consider those matters. Under our rules, we may affirm the trial court upon any ground appearing in the record. Supreme Court Rule 4, Section 8.

The decision of the trial court is

Affirmed.

SANDERS, C. J., and SHAW, J., concur.