THE PEOPLE *ex rel*. Traders' Ins. Co. of New York
*v.*
JAMES R. B. VANCLEAVE.

*Opinion filed December 18, 1899.*

1. INSURANCE—*section 4 of Insurance act of 1869 construed.* Section 4
of the Insurance act of 1869, (Rev. Stat. 1874, p. 591,) authorizing
the Auditor of Public Accounts (now superintendent of insurance)
to refuse a license to a company if he deems the name too similar
to one already in use, applies to domestic corporations only, and
does not empower the superintendent to refuse a license to a for-
eign company merely because its name is similar to that of an
existing domestic insurance company.

2. MANDAMUS—*when mandamus lies to compel the superintendent of
insurance to issue license.* Mandamus lies to compel the superintend-
ent of insurance to issue a license to a foreign insurance corpora-
tion when the only ground for refusal is the similarity of its name
to that of an existing domestic insurance corporation.

PHILLIPS, CARTER and BOGGS, JJ., dissenting.

ORIGINAL petition for *mandamus.*

MYRON H. BEACH, for relator.

E. C. AKIN, Attorney General, and THOMAS BATES, for respondent.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an original *mandamus* proceeding, to compel the issuance of a license to the relator, the Traders' Fire Insurance Company of New York, by the superintendent of insurance, to transact business in this State. The petition is based upon section 2 of the act approved June 4, 1879, entitled "An act for the better regulation of the business of insurance," etc. (1 Starr & Cur. Stat.—1st ed.—chap. 73, p. 1331.) Section 1 of that act prohibits any foreign insurance company from doing insurance business in the State until it has complied with certain requirements therein named, "in addition to those already imposed by existing law." Said section 2 then provides: "Upon complying with the requirements of section one (1) of this act together with all other requirements now imposed by existing law, the Auditor of Public Accounts shall issue to such incorporated company, association or partnership a license to transact its business in this State, and no such license shall be issued until all of said requirements shall have been complied with; and no such incorporated company association or partnership shall carry on the business for which it may have been incorporated, within this State until it shall have obtained such license," etc. The petition, by apt averments, sets forth that said insurance company had fully complied with all the requirements of the several provisions of our statutes in relation to insurance companies organized under the laws of other States or foreign governments, and that in January, 1898, it made application to the respondent, James R. B. VanCleave, insurance superin-

tendent of the State of Illinois, accompanied by the proper fee, for license, which he refused to issue.

To the petition an answer has been filed, admitting the averments as to compliance with the laws of this State in all respects, and the making and refusal of the application, but setting up that there was organized in this State a corporation under the name of "The Traders' Insurance Company of Chicago," located in Chicago, which had been for many years, and was at the time, carrying on, under its said name, an insurance business in the State of Illinois, and basing the refusal to issue the license applied for upon that part of section 4 of said chapter 73 (1 Starr & Cur.—1st ed.—p. 1311,) which provides: "And the Auditor of Public Accounts [the superintendent of insurance] shall have the right to reject any name or title of any company applied for, when he shall deem the name too similar to one already appropriated, or likely to mislead the public in any respect." To this answer a demurrer was interposed, and the cause is submitted on the issue thus formed.

The respondent insists that under the foregoing language of section 4 he was clothed with a discretionary power to issue or refuse the application of the relator because of the similarity of its name or title to that of the Chicago company. On the contrary, the relator contends that the language of section 4 has no application whatever to the licensing of foreign corporations to do business in this State,—and this is the only issue in the case.

For the purposes of this decision it may be admitted that the name of the applicant, "The Traders' Fire Insurance Company of New York," is so similar to that of "The Traders' Insurance Company of Chicago," that the respondent would, if authorized to apply the provision of section 4 to applications for license by a foreign insurance company to do business in this State, be justified in refusing the application. The general rule is, that

*mandamus* will not lie to compel a public officer to do an act in the performance of which he is clothed with the exercise of discretionary power. There is an exception to this general rule, where it sufficiently appears that the refusal to act is arbitrary, or from a motive to accomplish his own personal or selfish ends,—in other words, where there is a palpable abuse of his discretion. But that exception has no proper application here, the question being, did the respondent have any discretionary power in the matter of the application. Where the duties are merely ministerial, *mandamus* is the appropriate remedy to compel their performance. The question must therefore be, is that provision, conferring discretion upon the superintendent of insurance in the organization of domestic companies, applicable to the granting of license to foreign insurance companies to do business in the State?

In the legislation on the subject of the business of insurance within the State two classes of companies are contemplated and provided for by the statute: First, those organized under the laws of this State; and second, those organized under the laws of a foreign State or government. The above quoted language in section 4 is, by its terms and its connection with the preceding language of that and the third section, applied to the organization of companies in this State, and has nothing whatever to do with their manner of doing business. This we regard as too clear to be the subject of controversy. As we understand the contention of respondent, his position is, that, inasmuch as section 1 of the act approved May 31, 1879, entitled "'An act to compel all insurance companies of other States and countries doing any kind of insurance business in this State, other than life, to comply with the general fire and marine insurance laws of this State," says "that every insurance company, or association incorporated by or organized under the laws of any other State, or in any foreign government must comply with

the requirements of the general insurance laws of this State, governing fire, marine, and inland navigation insurance companies, doing business in the State of Illinois," and because section 2 of the act approved June 4, 1879, *supra,* says "and no such license shall be issued until all of said requirements have been complied with," the provision in regard to the similarity of names of companies sought to be organized is obligatory upon foreign corporations as one of the "requirements" of the statute. It will be seen that the requirement of the act approved May 31, 1879, is, that there shall be a compliance with the requirements of the general Insurance law of this State *governing* fire, marine and other insurance companies,— not that they shall comply with the laws regulating the incorporation or organization of insurance companies in this State. And to the same effect is the plain meaning of section 2 of the act approved June 4, 1879, when read in connection with the preceding section 1. In no provision or requirement of the statute relating to the subject of admitting foreign companies to do business in this State is there anything said or implied as to the name of the applicant. It might be said that section 4 indicates the policy in this State to be that no two corporations doing an insurance business in the State shall have the same or similar names, or names which are likely to mislead the public in any respect; but conceding that to be true, we are at a loss to perceive how it can be maintained that the superintendent of insurance has a discretionary power to enforce that policy, in the absence of legislative enactment authorizing him to do so. To hold that he may do so as the statute now stands would be no more or less than judicial legislation.

Counsel for respondent seem to think that support for their contention is found in the cases of *Hazelton Boiler Co.* v. *Hazelton Tripod Boiler Co.* 142 Ill. 494, and *Illinois Watch Case Co.* v. *Pearson,* 140 id. 423, but we are unable to perceive wherein the matters there decided have any

pertinency whatever to this question. Nor are the authorities cited from other States in point, for the reason that those decisions proceed upon the express or implied provisions of statutes vesting discretionary power in the officer, whereas here, as we have seen, section 4 having no application to the admission of foreign companies, all the duties imposed upon the superintendent are merely ministerial. On this proposition the case of *State* v. *Insurance Co.* 49 Ohio St. 440, will be found in point.

It appears by the petition and answer the practice by the respondent and his predecessor has heretofore been to admit companies organized under the laws of other States and governments without reference to the fact that their names or titles were similar or the same as those of other companies doing business in the State, or even those organized in the State and doing business. On behalf of the petitioner this is urged as a construction of the statute and of binding force upon the respondent, whereas he attempts to distinguish those admissions from the present application by the fact that there no protest or objection was made to the granting of the license, while here, he says, the Traders' Insurance Company of Chicago did make its protest. We are not disposed to attach importance to what has heretofore been done. As already said, if discretionary power is given the superintendent he had a right to refuse the application of the relator. If no such power is given it was his duty to issue the license, and, in either case, what may have been done in other instances, by himself or predecessors, could in no way influence or control his action. Of still less influence upon his official conduct should have been the unwillingness of the other company that license should be granted.

The argument that it is unreasonable and inconsistent for the State to prohibit companies to organize in this State under the same or similar names and at the same time admit foreign companies to do business here with-

out reference to that fact might be properly addressed to the legislature but cannot control our decision.

We are of the opinion that the relator is entitled to the relief here sought, and a writ of *mandamus* will accordingly be issued, as prayed.       *Writ awarded.*

PHILLIPS, CARTER and BOGGS, JJ., dissenting.