13237

CITY OF GREENVILLE *ET AL.* v. PRIDMORE, COUNTY
SUPERVISOR *ET AL.*

(160 S. E., 144)

*Messrs. B. A. Morgan, W. E. Bowen* and *J. L. Love,* for petitioners,

*Mr. J. D. Lanford,* for respondent,

September 3, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The petitioners, municipalities of Greenville County, of this State, presented to Mr. Justice Cothran of this Court their petition, which alleged, briefly stated, the following matters:

That under the law, it is the privilege and duty of the petitioners and their officers to sentence to the county jail or to hard labor upon the public works of the County of Greenville those persons found guilty of violation of ordinances of the respective municipalities, and that it is the duty of the respondents, the county supervisor and the jailer of Greenville County, to admit to the county jail or public works of the county such persons sentenced, and to care for and use said prisoners in the same manner as they are required to do as to prisoners sentenced by the magistrates or county Court or the Court of General Sessions of Greenville County; that the respondents have refused to accept the prisoners so sentenced in the municipal Courts, and have announced that they will continue in their declination to accept them.

Upon the prayer of the petitioners, Mr. Justice Cothran, on March 18, 1931, made his order requiring the respondents, A. F. Pridmore, as supervisor, and W. F. Christopher, as jailer of Greenville County, to show cause to this Court, if any they could, why they should not be enjoined from continuing in, and carrying out, their refusal to admit to, and to receive in the jail, or on the public works, of Green-

ville County, all prisoners sentenced thereto by the petitioning municipalities, or any of them; and in the meantime, the respondents were restrained from refusing to admit to the county jail or the public works the prisoners so sentenced.

At the appointed time, the respondents, in this Court, submitted their return to the rule to show cause. Therein, they admitted that formerly, and for many years, as a matter of custom, the county authorities of the County of Greenville had received prisoners sentenced by the municipalities of that county, but that they were not bound to continue that custom. They said, too, that the custom grew up during a time when the supervisor of Greenville County could use the labor of the prisoners sentenced by the municipalities on its chain gang advantageously to the county's interest, but that recently, because of a great change in the condition of road working, convicts of the class of those sentenced in the municipal Courts could not be employed to an advantage, since machinery, which only could be operated by trained persons, was used in the building and maintaining of roads, and that the municipal convicts, sentenced for a very short time, usually only thirty days, could not operate such machinery.

Respondents took the legal position that, under the law, the respective municipalities have to care for and maintain their own prisoners and are required to form their own chain gangs, and that the county officials cannot be required to accept, in the county jail and on the county chain gang, prisoners sentenced by the municipalities. The respondents also allege, in justification of their position, that the amounts appropriated by the General Assembly for the year 1931 for the care of convicts of Greenville County was insufficient to properly provide for both the county convicts and convicts sentenced by municipalities.

Under the view we take of the case, the main questions presented for our determination are these: (1) Has a municipality the power to sentence a violator of its ordinances

to the county jail, and, if so, should it or the county bear the necessary expenses for the care of the prisoner? (2) Has a municipality the power to sentence a violator of its ordinances to labor upon the public works of the county in which it is situate, and, if so, shall the municipality or the county pay the prisoner's expenses? Correlatively, we have to say whether there is imposed upon the county authorities the duty of receiving such prisoners. In connection with these questions, we think it proper to pass also on a few incidental matters.

In deciding the questions, we turn to the sections of the Code of Laws 1922, which we, as well as the attorneys on both sides, regard as being applicable. They are Sections 60, 62, 63, 125, and 126 of the Code of Criminal Procedure (Volume 1), and Sections 1077, 1078, 1079, and 1080 of Volume 3.

Our "chain gang" legislation started, so far as we have ascertained, with the Act of December 22, 1885 (19 Stat., 125), entitled, "An Act to Utilize the Labor of Jail and Municipal Convicts, and to Empower the Courts and Municipal Authorities to Impose the Punishment of Labor Within Their Respective Jurisdictions." Prior to that time, prisoners who committed offenses less than capital crimes were sentenced to the state penitentiary, or to the county jails, or to town guardhouses. Since the enactment of the original Acts from which the several sections come, there have been many amendments thereto. Except for the purpose of aiding in construing the language of the sections of the Code, it is not necessary to go into the full history of all this legislation, for, under the constitutional provision (Article 6, § 5), we are bound to recognize the Code of 1922, and the statutes passed since its adoption, *as the only general statutory law of the State. State v. Meares, Superintendent, etc.,* 148 S. C., 118, 145 S. E., 695. We have not been cited to any Act amendatory of the sections mentioned affecting the issues for determination.

In our quotations from the Code, we have added the emphasis.

Subdivision 3 of Section 60, Code of Criminal Procedure, which relates to "Punishments by municipal Courts," provides that, *"every person sentenced to imprisonment,* either directly or in consequence of a failure to pay a fine imposed, *shall be subject to work upon the public roads or streets* of said city or town, or *of the county* in which such city or town is situate, during the term of such imprisonment."

In Section 62, *ibid.,* in the first paragraph, it is provided that mayors or intendants or city or town councils shall have the power to arrest and upon conviction "to commit to the town guardhouse * * * any person or persons who may be guilty of disorderly conduct in said town to the annoyance of the citizens thereof." In the second paragraph of that section, it is stated that the mayors or intendants and aldermen, councilmen, or wardens, may arrest, or cause to be arrested, certain persons, and are given the power "to commit to the guardhouse * * * *or to the county jail or to the county chaingang.* * * *"* The paragraph contains this proviso: *"That if the offender be committed to jail it shall be done at the expense of the said city or town."*

Section 63 of the Code of Criminal Procedure relates generally to municipal convicts. The enactment is to this effect: When a municipality has not a sufficient number of convicts sentenced to work on the public works of the town to warrant the expense of maintaining a town chain gang, then the municipal authorities are authorized *"to place said convicts on the county chaingang for the time so sentenced."* In that section, the county authorities are also authorized to exchange labor with the town authorities, and place county convicts on the public works of the town for the same number of days the town convicts work on the public works of the county—but that provision is discretionary and not mandatory.

Section 125 of the Code of Criminal Procedure relates to "able-bodied male convicts." Therein, it is enacted that all

able-bodied male convicts, "without regard to the length of sentence, * * * shall hereafter be sentenced to hard labor *on the public works of the county in which convicted, if such county maintains a chain gang,* * * * and in the alternative to imprisonment in the county jail or State penitentiary at hard labor." There are some provisions and exceptions in this section not necessary to a decision of the questions before us. (We may say that it appears from the language used that Greenville and Clarendon Counties are exempted from the provisions of this section, although the General Assembly by the Act of February 13, 1912 [27 Stat., 553], made the law applicable to Clarendon County, and by the Act of February 6, 1914 [28 Stat., 515], made it applicable to Greenville County, which amendatory acts were evidently overlooked in the preparation of the 1922 Code).

Section 126, *ibid.,* Code of Criminal Procedure, which is an exact duplicate of Section 1077 of Volume 3 of the Code (Civ. Code), relates to the convicts which may be sentenced to county chain gangs. Both it, and its duplicate, have such an important bearing upon the questions at issue, that we quote it almost in full:

"All the Courts of this State and *municipal authorities* which, under existing laws, have power to sentence convicts to· confinement in prison with hard labor, *shall sentence all able-bodied male convicts to hard labor upon the public works of the county in which said person shall have been convicted,* and in the alternative to imprisonment in the county jail or State penitentiary at hard labor: Provided, That *municipal authorities may sentence municipal convicts to work upon the streets and other public works of the municipality in which they have been convicted, and such convicts when so sentenced shall work under the exclusive direction and control of the municipal authority imposing sentence.*"

That section has a provision that no convict whose sentence shall be for a longer period than five years shall be so

sentenced, which conflicts with the provision in Section 125, *ibid.*, that the sentence of able-bodied male convicts to hard labor on the public works of the county shall be "without regard to the length of sentence." We refer later to the contradictory provisions. The conflict was due to the failure of the Code commissioners to give regard to the Act of February 18, 1911 (27 Stat., 169).

Section 1078 of Volume 3 of the Code of 1922, which follows Section 1077 (the duplicate of Section 126 of the Code of Criminal Procedure), relates to the sentencing of convicts to county chain gangs. Section 1078 provides: (a) That convicts sentenced to labor on the public works of *the county* (which may, under the provisions of Section 1077, include municipal convicts so sentenced), shall be under the supervision of the county authorities and organized into a county chain gang; (b) that convicts sentenced to labor on the public works of *the municipality* (where the municipality has exercised its option under Section 1077), shall be under the supervision of the municipal authorities and similarly organized, but convicts sentenced to labor on the public works of a municipality, who are "under the exclusive supervision and control of the municipal authorities," *cannot be required* to labor on any "other highways, streets or public works in or of the county in which such a city or town may be situated"; (c) that where the county convicts shall not have been organized into a chain gang or are not required to work upon the public works of the county, they may be required to work upon the public works of the municipality upon such terms as may be agreed upon between the respective authorities.

Section 1079 provides for the maintenance and equipment by the county authorities of such convicts as may have been placed in their charge, *either by state or municipal authorities* under Section 1077, and plainly makes no attempt to curtail the power conferred by that section.

Section 1080 makes the same provision in reference to

municipal convicts, that is, to such as may have been sentenced by municipal authorities to work upon municipal public works, in cases as to which the municipal authorities have exercised the option under Section 1077.

The Act of 1885 (19 Stat., 125), limited the term to which a convict could be sentenced to the public works (what we now term, generally, "chain gang") of a county or municipality to a period not exceeding ninety days. The first section of that Act was, in all probability, the beginning of what is now Section 126 of the Code of Criminal Procedure, and Section 1077 of Volume 3 of the Code. In Section 2, it was expressly provided that convicts could "be required to perform hard labor upon the public highways, roads, bridges and other public works of the county *in which the offense of which they are convicted was committed,* or upon the streets or other public works within the limits of the incorporated cities, towns and villages *in which the offense for which they are sentenced was committed."* Under the law there enacted, it would clearly appear that a municipal convict could not be worked on any chain gang beyond the limits of the municipality in which his offense had been committed.

On December 20, 1892 (21 Stat., 22), the General Assembly amended the Act of 1885. One of the amendments was to make the law apply only to "male" convicts; and another was to increase the length of time from ninety days to twelve months. But the same provision that municipal convicts could only be required to work upon the public works of the municipality in which the offense for which they were sentenced was committed was retained. That Act contained this important new feature: In case suitable and efficient guards for the safe-keeping of convicts should be provided by a municipality of the county, and if no such guard was provided by the Board of County Commissioners of the county, in which the municipality was situated, then the State Courts, as well as municipal Courts, could sentence persons convicted of offenses committed within the county

to the municipal chain gang. It is therefore seen that under the law then of force, while municipal convicts could not be sentenced to the county chain gang, the *State or county convicts could be sentenced to a municipal chain gang.*

The next legislative enactment touching the subject of chain gangs, discovered by us, was the Act of January 4, 1894, a statute of the session of 1893 (21 Stat., 481), entitled, "An Act to Provide a System of County Government for the Several Counties of the State." In Section 23 of that Act, it was provided that "all the Courts of this State and municipal authorities which under existing laws have power to sentence convicts to confinement in prison with hard labor *shall sentence all able-bodied male convicts to hard labor upon the public works of the county* in which said person shall have been convicted, and in the alternative to imprisonment in the county jail or State penitentiary at hard labor." But the section contained a proviso that municipal authorities *may sentence municipal convicts to the municipal chain gang.* The period to which a convict could be sentenced to the chain gang was increased to two years. Under the law then made, municipal authorities could sentence to the county chain gang, but in their discretion, if they preferred to do so, they might sentence to the municipal chain gang.

The Act of January 4, 1894, was amended by that of March 9, 1896 (22 Stat., 244). The amendatory Act (Section 23), gave the Circuit Courts and all Courts inferior thereto and municipal Courts the power, "in their discretion," to impose upon persons tried and convicted of offenses a sentence of labor on either the county chain gang or a municipal chain gang. There again appears, although in different language, in that statute the provision that convicts upon whom may be imposed sentences of labor on the chain gang of a municipality could not be required to labor on any other highway, street, or public works of the county in which the municipality was situated. Section 24 of the 1896 Act contained the identical language used in Section 1078 of Volume 3 of the Code of 1922 with only two

minor differences. One of the little differences is the use of the article "a" in the Code where it does not appear in the original Act. The other is this: In the original Act the language was "municipal public works," while in the language of the Code, the word "public" has been left out.

There are other amendatory Acts from the time of the passage of the Act of 1896 to the adoption of the Code of 1922, but as they do not appear to bear on the determination of the questions before us, it is not necessary to refer to them. We may say, generally, that the time of chain gang service was increased first to five years and later the restriction as to time was removed, a confusion appearing in the Code to which we have already referred.

Taking into consideration the legislative intent, as expressed from time to time in the several Acts to which we have invited attention, we find its last intention expressed in the sections of the Code to which we have referred, and we undertake to deduce from the language of those sections what we regard as the present law concerning the questions before us.

1. Municipal authorities *may,* for any proper cause, ██ *sentence* offenders against the laws of the municipalities *to the county jail,* and the county jailer is required to receive them, but the municipal authorities *must pay* the legal expenses for their care and confinement. Sections 60 and 62, Code of Criminal Procedure.

2. Municipal authorities *have the power to sentence ablebodied male convicts to hard labor upon the county chain gang* of the county in which said person shall have been convicted, and it is the duty of the county authorities in charge of the respective chain gangs to accept the prisoners so sentenced. Sections 60, 62, 63, 125, and 126 of the Code of Criminal Procedure, and Sections 1077 and 1078 of Volume 3, Civil Code.

3. The county authorities *are required* to diet and ██ provide suitable and efficient guards for the convicts sentenced to the county chain gang by the municipalities. Section 1079, Vol. 3, Civil Code.

4. Municipal authorities *may* sentence persons convicted of offenses against their laws, if they desire to do so, to the municipal chain gang. Sections 60, 63, and 126 of the Code of Criminal Procedure, Sections 1077 and 1078 of Vol. 3 of the Code, Civ. Code.

5. If municipal authorities establish a municipal chain gang, they are required to pay all the expenses of the dieting, guarding, etc., of the convicts sentenced by such authorities to such chain gangs. Section 1080, Vol. 3, Code, Civ. Code.

6. Persons sentenced by municipal authorities to labor on a municipal chain gang, and placed under the supervision of the municipal authorities, *cannot be required* to labor on the county chain gang. Section 1078, Vol. 3, Civ. Code.

7. When the county authorities have not formed a county chain gang, State and county Courts and magistrates *may* sentence persons convicted of the violation of the criminal laws to labor on any chain gang established by a municipality situate in that county, *if terms as to the working and maintenance of such convicts are agreed upon by and between the County Commissioners and the municipal authorities operating such chain gangs.* Section 1078, Vol. 3, Civ. Code.

8. When a municipality does not desire to form and maintain its own chain gang, the authorities of the municipality and the county authorities *may,* if they desire, arrange for municipal convicts to be sentenced to the county chain gang upon an agreement that the county authorities will exchange in the matter of labor of such convicts on the public works of the municipality. Section 63, Code of Criminal Procedure.

For the information of those who may be interested, we have called attention to the error in the Code as to the inapplicability of the provisions of Section 125 of the Code of Criminal Procedure to the Counties of Clarendon and Greenville; and to the contradictory provisions in Section 126 of the Code of Criminal Procedure

(duplicated as Section 1077 of Volume 3 of the Code), and those of Section 125 of the Code of Criminal Procedure relating to the time one convicted of crime may be sentenced to the chain gang. We have noted that these same confusing and contradictory provisions are in the proposed Code of 1932, which, however, is not the fault of the present Code Commissioner, as it was his duty to reproduce all the sections of the 1922 Code, excepting as they have been amended since its adoption. Without passing upon the particular effect of any of these contradictory provisions, and it is not required of us herein to decide any matter relating thereto, we may state that they do not affect any of the questions before us. This for one main reason, if for no other: municipal convicts for any one offense cannot be sentenced to more than thirty days' imprisonment at hard labor.

The petitioners are entitled to the relief we have indicated by the conclusions announced; and the judgment of this Court is that the necessary order or orders to carry into effect our holdings be issued upon the application of the petitioners, or any one of them.

MESSRS. JUSTICES COTHRAN, STABLER, CARTER and BONHAM concur.