15230

WESTON *ET AL.* v. BOARD OF COM'RS OF POLICE INS. AND
ANNUITY FUND

(13 S. E. (2d), 600)

*Messrs. McEachin & Townsend* for appellants,

*Messrs. Heyward Brockinton* and *John W. Crews* for respondent,

March 13, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

This appeal brings up for review a judgment of the Circuit Court which sustained the action of the Board of Commissioners of the Police Insurance and Annuity Fund in disallowing a claim for $1,000.00 made against it by the plaintiffs, as beneficiaries of Julian B. Weston, Sr., deceased. The appeal involves the construction of an Act passed by the legislature which became effective April 17, 1937, Acts of 1937, page 295. By the Act, the General Assembly created a Board of Commissioners of the Police Insurance and Annuity Fund of the State of South Carolina, which had for

its purpose the payment of insurance and annuity benefits to the peace officers of the State.

Section 14 of the Act provides: "After a peace officer has served continuously as an active peace officer in South Carolina for a term of five (5) years, he will be issued a certificate whereby the board will agree to pay the sum of One Thousand ($1,000.00) Dollars, to a designated beneficiary upon the death of said officer; Provided, That at the time of his death he is still in active service or is an annuitant as herein provided."

Julian B. Weston, Sr., while in active service as a magistrate in Richland County, became eligible for membership in the South Carolina Peace Officers' Assocation, an organization authorized by the Act, and upon his application was admitted as a member and paid to the board, as required by the Act, monthly dues from June 1, 1937, to November 1, 1937. He died on October 27, 1937, without having received from the board the certificate for $1,000.00 referred to in Section 14.

The real issue concerns the interpretation of Section 16 of the Act, which is as follows: "Time pay benefits.—No benefits shall be payable under the provisions of this Act until and after One (1) year from the date of the passage of this Act and its approval by the Governor of the State of South Carolina."

It will be noted that Mr. Weston's death occurred prior to the expiration of the first year of the Act, and it is contended by the defendant that it is clearly shown by Section 16 that it was the intention of the lawmakers that no rights to benefits or cause of action should accrue to any peace officer until the 17th day of April, 1938, that is, commencing with the second year of the operation of the Act. The plaintiffs argue that the usual and popular meaning of the word "payable" is, in effect, "demandable," and that as so defined the payment of insurance was merely suspended

and held in abeyance during the first year, and would become effective the second year.

A system of pensions and death benefits to police and peace officers injured or disabled while on duty, or retiring after a term of service, has been in effect in several states for many years. In this State, however, this was an unexplored field until the passage of the Act of 1937. In accordance with settled principles of construction, the provisions of the Section under discussion are to be read and understood according to the natural and obvious meaning and import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. In keeping with familiar concepts, the statute as a whole must receive a practical, reasonable and fair interpretation consonant with the purpose, design and policy of the lawmakers. If its terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense, unless it clearly appears from the context that the legislature intended to use such terms in a technical or peculiar sense. It is only where the intention of the legislature is vaguely or inadequately expressed, or where the terms of the Act are equivocal, that the Court must resort to construction.

As we view it, there are no contradictions or ambiguities in the Act, real or seeming. The statute is explicit and unambiguous, and there is no room or occasion for interpretation. Under the plan provided in the Act, the funds were to be raised and accumulated from monthly dues paid in by the members of the South Carolina Peace Officers' Association, and from a certain proportion of all fines collected in the Municipal Courts, Magistrate's Courts, and Courts of General Sessions in the State. As stated in the Circuit Court order, when the Act went into effect the board had no funds, and commenced its administration with an empty purse. The legislature knew this. Those becoming members not only knew it, but likewise knew that the law provided

that no benefits were payable "until and after" the expiration of one year from its approval by the Governor. And this could only mean that no claim arising during the first year would be paid.

Counsel for the appellants argue that such a construction will result in an injustice to those members who paid, and then .died during the first year. This, however, it seems to us, was a matter for the consideration of the lawmaking body, and not for the Court. It must be kept in mind, too, that the provisions of the statute as to membership in the South Carolina Peace Officers' Association are not mandatory. There is no compulsion exerted to force one to become a member and thereby avail himself of the benefits of the Act. He joins voluntarily, but when he does join he must take the law as he finds it. For the protection of all, the legislature evidently deemed it wise and vitally important that no benefit should be payable until a working capital or reserve fund could be accumulated, which would safeguard the future operation of the law, and thereby effectuate its purpose. To this end, it provided in express terms that no benefit would be payable the first year—that the fund would remain intact. The only reasonable conclusion which can be drawn from this legislative prohibition, we think, is that no claim arising during the first year would have any validity then or later. Claims and demands coming within the purview of the Act were to be those arising after the expiration of the first year.

In this case it is unfortunate that the deceased died at a time when the Act was operative, but the funds were not available. This Court cannot assume the legislative function of amending the Act so as to provide that beneficiaries of those members dying within the first twelve months shall be paid during the second year, or at any subsequent time. In other words, an entirely new provision cannot be imported into the statute giving it a meaning not otherwise

found therein, and which it is evident the legislature did not intend to include.

We think it most reasonable to conclude that had the legislature intended that payment of claims arising during the first year should merely be deferred and paid at a later time, it would have said so in unmistakable language. Instead of doing this, it flatly declared to the contrary. The whole design and scheme of the Act clearly indicates that during this first period the fund should be built up and remain undisturbed, so that it would be adequate to discharge claims arising thereafter. Obviously, if payment of benefits was merely postponed, as argued by appellants, from the first year to the second or some subsequent year, then conceivably the whole fund so paintstakingly gathered might have been completely exhausted, thus frustrating the purpose of the Act and rendering the administration of the law fruitless and ineffective. A year's storage of claims against a year's accumulation of funds might well have ended disastrously for the whole plan. We think it was the plain purpose of lawmakers to create a firm foundation, economically sound, upon which the administration of the law might find safe anchorage for its future operations in the interest of all beneficiaries, and with no liability or rights coming into existence until after the expiration of the first year. Any other construction, in our opinion, would do violence to an obvious legislative purpose.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MR. JUSTICE BAKER and MESSRS. ACTING ASSOCIATE JUSTICES L. D. LIDE and J. STROM THURMOND concur.