16414

INDEPENDENCE INS. CO. v. INDEPENDENT LIFE & ACC. INS. CO., A FLORIDA CORPORATION

(61 S. E. (2d) 399)

24

*Mr. Lee Guest,* of Jacksonville, Fla., and *Messrs. Mozingo & Watts,* of Darlington, *Charles B. Elliott* and *McKay & McKay,* of Columbia, *for Appellant,*

Messrs. *John M. Daniel, Attorney General,* of Columbia, *Brown & Jefferies,* of Barnwell, and *Williams & Henry,* of Greenville, *for Respondent,*

*Mr. Lee Guest,* of Jacksonville, Fla., and *Messrs. Mozingo & Watts,* of Darlington, *Charles B. Elliott* and *McKay & McKay,* of Columbia, *for Appellant, in reply,*

September 27, 1950.

STUKES, Justice.

Independence Insurance Company was incorporated in this state in 1930 and has been regularly licensed each subsequent year by the State Insurance Commissioner. Originally it issued life, health and accident policies, but in December, 1938, it reinsured its life insurance business with another company and thereafter confined its activity to the other lines. That transaction is referred to in the record as a sale of its life business. Prior to that the annual premium income was nearly a half million dollars but currently it has been less than $5,000.00 and declining each year; only two persons are licensed as its agents and in recent years the company has issued no new policies. However, it continues to operate and an official testified that the company plans to expand in the accident and health field.

Prior to July 30, 1947, The Independent Life and Accident Insurance Company, a Florida corporation also about

twenty years old, applied to the commissioner for admission to do business in this state and was duly licensed on that date since which it has made substantial progress here and at the time of the complaint which gave rise to this proceeding had 34 agents, which has risen to 158 by March, 1948. In the half year of 1947 the premium income in this state was $30,-325.45. The record for appeal does not include later figures or for any full year but they are publicly available in the annual reports of the commissioner.

On September 24, 1947, the president of Independence Insurance Company addressed a letter to the commissioner complaining at the former licensing of the Florida company because of alleged confusion which had resulted from the similarity of names. The commissioner gave notice to both companies of a hearing which he held on March 8, 1948. It was attended by officials and counsel for both companies but the representatives of the Florida company appeared specially to object to the jurisdiction of the commissioner, the grounds of which were filed in writing, and upon decision to go forward with the hearing, they withdrew. One of the grounds was as follows: "Applicant (appellant) is a foreign insurance company now licensed to do business in the State of South Carolina, therefore comes within the provisions of Section 108 of Act No. 232 of the Acts of 1947 reading: "nothing herein contained shall apply to foreign insurance companies now domesticated and licensed in this State." (It was preserved in the court on review by proper exception.) The commissioner took the testimony of the vice-president and treasurer (one person) of Independence Insurance Company, which supported the claim of confusion, mix-up in the mails, etc.

Thereafter, on March 24, 1948, the commissioner issued his order whereby he refused to renew the license of the Florida company for the license year commencing April 1, 1948, unless it should change its name so that it should not be nearly similar to that of the objecting company or other companies licensed in the state. The matter was presented to

the Court of Common Pleas for Darlington County which, upon the record and upon the affidavit of counsel, stayed the enforcement of the commissioner's order and preserved the prior status pending final adjudication. The proceedings were transferred by consent and for convenience to the Court of Common Pleas for Richland County. Evidence was there adduced in behalf of the appellant which consisted mainly of the records in the office of the commissioner which related to the activities and extent of business of the contending companies which, as already mentioned, are available in the published reports of the department. Court review of orders of the commissioner is provided in 1948 Code Supp. p. 376, sec. 7952. Part (3) of the cited section is as follows: "The Court shall have jurisdiction to review the facts and the law and to affirm, modify or to set aside the order or decision of the commissioner and to restrain the enforcement thereof." There was controversy in the court with reference to the admissibility of evidence which, in our view, is of no moment.

The court upheld the action of the commissioner, whence this appeal in which we find it necessary to consider only the second exception, as follows: "The Court erred in holding that the Insurance Commissioner, after licensing the Appellant, a foreign insurance company, had the right to refuse to relicense it under the very law whose proviso clearly denied the exercise of such right in the circumstances existing herein." It is a repetition of appellant's timely objection to the asserted power of the commissioner, which is quoted *ante*. Application of the governing statute requires sustention of the stated exception, as will be seen, and this will dispose of the matter. Authority need not be cited for the observation that the power of the Commissioner is derived solely from the statutes. To them alone we look for his authority and jurisdiction. However, see *People ex rel. Traders Fire Insurance Company v. Van Cleave,* 183 Ill. 330, 55 N. E. 698, 47 L. R. A. 795, which exemplifies the necessity of plain statutory authority for ac-

tion of the nature of that here under review. Examination of our law discloses not only lack of authority in the commissioner but an express bar to the action which he attempted to take.

There was approved on February 25, 1944, No. 385, 43 Stat. 1191, the following act of the legislature: "No foreign insurance corporation shall be domesticated or licensed to do business in South Carolina when the name thereof is identical with that of any active insurance corporation previously domesticated, licensed or chartered to do business in the State and which has engaged in business therein for one year or more, nor shall any such insurance corporation be domesticated or licensed to do business in said State when the name thereof is so nearly similar to any such said corporation as to lead to confusion and uncertainty; Provided however that nothing herein contained shall apply to foreign insurance corporations now domesticated and licensed in this State."

In 1947 the legislature enacted an extensive Insurance Code which is published in the 1948 Supplement to the Code of 1942 and is there contained in sections 7936-8111, inclusive, pages 371-491, inclusive. The original act was No. 232 of 1947, 45 Stat. 322. Section 108 of Art. 1, of the original act, now Code section 8043, 1948 Supplement, p. 408, is as follows: "No foreign insurance company shall be domesticated or licensed to do business in South Carolina when the name thereof is identical with that of any active insurance company previously domesticated, licensed or chartered to do business in this State and which has engaged in business therein for one year or more, nor shall any such insurance company be domesticated or licensed to do business in said State when the name thereof is so nearly similar to any such said company as to lead to confusion and uncertainty. (Before granting a certificate of authority to do business in this State to any company, the commissioner shall be satisfied by proper evidence that such applicant for license is duly qualified to do business under the laws of this

State; that it is safe and solvent; that its dealings are fair and equitable and that it conducts its business in a manner not contrary to the public interests); provided, however, that nothing herein contained shall apply to foreign insurance companies now domesticated and licensed in this State."

It is noted that the foregoing lack identity because of the material addition in this section of the act of 1947, now Code, sec. 8043, which is enclosed in the added 'parentheses in our quotation of it. This is of interest in connection with the determination hereinafter of whether the 1947 legislative action was but a re-enactment of the act of 1944. It was not, as is seen.

In sections 1 and 3 of Article 13 of the act of 1947, approved May 12, 1947, 45 Stat. 472, 473, are provisions expressly repealing certain former codifications of the insurance law of the state, a general repeal of inconsistent laws, and an effective date of the act as October 1, 1947.

The lower court disposed of this important point, upon which we find that the case properly turns, quite briefly, as follows: "The Act of 1944 was reenacted in the Insurance Law of 1947 in substantially the same words. The reenactment does not change the legal status of the applicant company. In 50 Am. Jur., Section 441, page 461, it is clearly stated that 'The re-enactment of a statute in substantially the same words effects no change in the law but merely continues the original law in force.' The proviso only affects those foreign insurance companies domesticated and licensed in the State at the time of the effective date of Act No. 385 of 1944." The text quotation is applicable to a simple re-enactment which is not what took place in this instance. Indeed, it is offset by the following from 50 Am. Jur. 483: "The inclusion of a statute in a code has been held not to operate as a re-enactment thereof." It is manifest that by the Act of 1947 the legislature intended to wipe the slate clean of insurance laws and enact a complete code upon the subject. The title begins, 45 Stat. 322: "An Act To Provide An Insurance Code For The State", etc. The first sen-

tence of the act, now section 7936, 1948 Code Supplement, p. 371, is as follows: "This chapter may be cited and shall be known as the Insurance Law." Its explicit repeal of former laws has been mentioned. It was upon its effective date in October, 1947, as it said in its first breath—*the insurance law*. When the matter of renewing appellant's license to do business in the state came before the commissioner in 1948, this was the law and it plainly provided that power to reject the application (because of similarity between appellant's name and respondent's) was prohibited by the proviso of section 8043, viz.: "nothing herein contained shall . apply to foreign insurance companies now domesticated and licensed in this State." Appellant, a foreign insurance company, was a licensed company on the effective date of the Act of 1947 and was entitled to the protection of the proviso which has been quoted.

The problem is similar (and similarly solved by the ██ authorities) to that which arises upon the adoption of a new general code and intervening statutes are omitted. It is well settled by our decisions that the code as adopted is the general law and the omissions are lost. *State v. Meares,* 148 S. C. 118, 145 S. E. 695. *Rutledge v. City of Greenville,* 155 S. C. 520, 152 S. E. 700. *City of Greenville v. Pridmore,* 162 S. C. 52, 160 S. E. 144. This accords with the practically uniform rule in other jurisdictions, both with respect to general codes and general revisions upon any one subject, such as here—insurance. 5 Ann. Cas. 202, annotation. 50 Am. Jur., 559, 560, Statutes, sec. 556, succinctly states the law, as follows: "As a general rule, the enactment of revisions and codes manifestly designed to embrace an entire subject of legislation, operates to repeal former acts dealing with the same subject, although there is no repealing clause to that effect. Under this rule, all parts and provisions of the former act or acts, that are omitted from the revised act, are repealed, even though the omission may have been the result of inadvertence. The application of the rule is not dependent on the inconsistency or re-

pugnancy of the new legislation and the old; for the old legislation will be impliedly repealed by the new even though there is no repugnancy between them."

The rule that statutes relating to the same subject are to be construed together and harmonized, if possible, has no application in construing an act intended to be complete in itself. Lewis' Suth. Stat. Con., Sec. 447. *Hamilton v. Rathbone,* 175 U. S. 414, 20 S. Ct. 155, 158, 44 L. Ed. 219, in which Justice Brown said: "where the meaning of the Revised Statutes is plain, it (the court) cannot recur to the original statutes to see if errors were committed in revising them." And, again: "The whole doctrine applicable to the subject may be summed up in the single observation that prior acts may be resorted to, to solve, but not to create, an ambiguity." Am. & Eng. Ency. Law, Vol. 26, p. 731, says: "Where the later of two acts covers the whole subject-matter of the earlier one, not purporting to amend it, and plainly shows that it was intended to be a substitute for the earlier act, such later act will operate as a repeal of the earlier one, though the two are not repugnant." For this, numerous cases are cited, among which is *Dist. of Columbia v. Hutton,* 143 U. S. 18, 12 S. Ct. 369, 36 L. Ed. 60, fully sustaining the text, as well as the proposition that the old and new statutes are not regarded as laws *in pari materia.* Additional authorities to the point are collected in the exhaustive opinion in *State v. Harden,* 62 W. Va. 313, 58 S. E. 715, 60 S. E. 394, from which the foregoing is drawn, which clearly demonstrate that the rule is equally applicable in the cases of civil statutes and criminal statutes. Additional authorities from other jurisdictions, State and Federal, will be found cited in *Fry v. Equitable Trust Co.,* 264 Mich. 165, 249 N. W. 619, 90 A. L. R. 175, and *La Fontaine v. Wilson,* 185 A. 673, 45 A. (2d) 729, 162 A. L. R. 1218, in which the rule was recognized and enforced as an exception to the rule which frowns upon repeal by implication. Many earlier decisions are collected in the annotation in 5 Ann. Cas. 202.

This distinction between an act amendatory of, or cumulative to, existing law and one undertaking to exhaust the field of the subject was recently pointed out by this court in *McCollum v. Snipes,* 213 S. C. 254, 49 S. E. (2d) 12, where it was applicable conversely to this case.

The question may be approached from other angles with the same result. The comprehensive act of 1947 looked forward, not backward to 1944. A cardinal rule of statutory construction is that an act will not be given retrospective effect in the absence of very clear provision. S. C. cases in 30 S. E. Dig. 890, Statutes Key 263. The act of 1947 does not evidence concern with the names of previously admitted foreign insurers but with those which should apply for admission after its effective date. Statutes tending to destroy private rights should be construed not only strictly, but as not retrospective in operation. *State v. Haynie,* 169 N. C. 277, 84 S. E. 385. The prime rule just mentioned requires strict construction of a statutory provision which would work a forfeiture or inflict a penalty. S. C. cases in 30 S. E. Dig. 881, Statutes, Key 241. Expulsion of an insurance company from the state is a severe penalty. It is capital punishment of a company to the extent of the state's jurisdiction and would, of course, occasion heavy financial loss. An amended statute must be construed as if the original statute were repealed and a new and independent act in amended form adopted, unless contrary intent is clearly indicated. *Windham v. Pace,* 192 S. C. 271, 6 S. E. (2d) 270. If resort to the cited rules were necessary for decision here they would militate for reversal. Doubt of the meaning of a statute is sufficient to evoke them.

The truth is, as was said in *Weston v. Board of Commissioners,* 196 S. C. 491, 13 S. E. (2d) 600, there is no ambiguity in the act before us. It is perfectly plain and there is no room or occasion for interpretation or construction other than the ordinary meaning of the words employed. The following is from the opinion in *State ex rel. Frier v. State Board of Education,* 179 S. C. 188,

183 S. E. 705, 708; "'One of the most elementary rules for the interpretation of statutes is that the intention of the Legislature must be gathered from a literal interpretation of the language of the statute where it is plain and unambiguous. * * * When the meaning of words is so plain and obvious, the courts cannot speculate on the intention. To do so would be an assumption of legislative power.' *State Co. v. Jones,* 99 S. C. 218, 82 S. E. 1048. See, also, *State v. Hagood,* 13 S. C. 46; *Lytle v. Southern Ry.-Carolina Division,* 171 S. C. 221, 171 S. E. 42, 90 A. L. R. 915; *Ex parte Savannah River Electric Co.,* 169 S. C. 198, 168 S. E. 554." Perhaps our leading case upon this principle of *ita lex scripta est,* applicable here, is *Beaty v. Richardson,* 56 S. C. 173, 34 S. E. 73, 76, 46 L. R. A. 517, opinion by Chief Justice McIver who quoted with approval the following: "The legislature must have intended to mean what it has plainly expressed, and consequently there is no room for construction. * * * Where the words of a statute are plainly expressive of an intent, not rendered dubious by the context, the interpretation must conform to and carry out that intent. It matters not, in such a case, what the consequences may be." See also the brief but well-reasoned opinion in *Banks v. Columbia Ry., G. & E. Co.,* 113 S. C. 99, 101 S. E. 285, in which it was said: "The purpose of construction is to ascertain the legislative intent from the words used; and, if these are susceptible to any sensible meaning, the court cannot add to them other words which would give them a different meaning without making, instead of construing, the statute." The rule was recently reiterated in *McCollum v. Snipes, supra,* 213 S. C. 254, 49 S. E. (2d) 12, and in *Etiwan Fertilizer Co. v. Tax Commission,* S. C., 60 S. E. (2d) 682.

It would indeed be confusing if "now" in the Act of 1947 meant not what it says but, as contended by respondent, a date in 1944 when the act of that year became effective. Practically, it would probably soon be lost sight of because the Code Commissioner did not give in the usual footnote

a reference to the 1944 act as the origin, but only to that of 1947. 1948 Code Supp., p. 408, § 8043. Had there existed such unusual intent the General Assembly could have easily expressed it.

It was said in *Montel v. Consolidated Coal Co.*, 39 Md. 164, 170: "This law belongs to a class of legislation not unfrequent in modern times, where it becomes necessary to revise and amend all existing laws upon some important matter, and establish in lieu thereof, a new and general law or Code, embracing a complete scheme of legislation on that particular subject (corporations). The Act of 1868 is emphatically a law of this character;" and at page 173 of 39 Md.: "If every omitted provision of existing laws on these same subjects were held to be still in force * * * (it) would render the work of revision a work of confusion and make it almost worse than useless. In such case it is far better and safer for the Courts to determine the new law to be a substitute for everything contained in the old."

It is said that the "grandfather" clauses of the Acts of 1944 and 1947 contemplate a previously *lawfully* licensed company which appellant is not because of the later alleged similarity of its name with that of respondent. But it is patent that this assertion assumes the correctness of the conclusion of the commissioner which he did not have even the semblance of right to make at the time that he did. The statutory time for such had passed. It is undisputed that a license, regular on its face, was duly issued to appellant prior to the effective date of the 1947 Act. There is no contention that this license was procured through fraud or other misconduct on the part of appellant. It is attacked solely upon the ground that the insurance commissioner inadvertently failed to discharge the duties imposed upon him by the Act of 1944. But there is no evidence that the General Assembly in exempting a company previously licensed intended to permit reconsideration of the action of the insurance commissioner in issuing such license.

The foregoing view relates solely to the validity of the license issued to appellant. The question of the exercise of the privilege thereby granted may be a different matter. The fact that the insurance commissioner issued a license to appellant is not conclusive of the rights of respondent. The latter is not precluded from seeking relief in a Court of Equity. Without expressing an opinion on the question of whether the circumstances in this case warrant such relief, it is concluded that a Court of Equity is the only forum open to respondent. It may not be amiss to state that the section of the 1947 Act under consideration is largely declaratory of the rule generally followed by the courts in cases relating to the protection of corporate names.

Judgment reversed and the proceeding dismissed.

FISHBURNE, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., dissents.

BAKER, Chief Justice (Dissenting).

It is with regret that I find myself in disagreement with the opinion of Mr. Justice Stukes.

I have no quarrel with the cited law in his opinion, but my quarrel is with the application of such law to the facts of this case where The Independent Life and Accident Insurance Company, a Florida corporation, and which will for convenience be hereinafter referred to as "Florida Company," was licensed to do business in this State on July 30, 1947, notwithstanding the fact that Independent Insurance Company, a South Carolina corporation, which will likewise hereinafter be referred to as "South Carolina Company," was then licensed to do business in this State, and had been continuously so licensed since the year 1930; and the further fact that the Act of 1944 was in full force and effect, and reading as follows:

"That no foreign insurance corporation shall be domesticated or licensed to do business in South Carolina when the name thereof is identical with that of any active insurance

corporation previously domesticated, licensed or chartered to do business in the State and which has engaged in business therein for one year or more, nor shall any such insurance corporation be domesticated or licensed to do business in said State when the name thereof is so nearly similar to any such said corporation as to lead to confusion and uncertainty; Provided however that nothing herein contained shall apply to foreign insurance corporations now domesticated and licensed in this State."

In 1947, as stated in the opinion of Mr. Justice Stukes, the legislature enacted an extensive Insurance Code, Section 108 of this Act being identical with the 1944 Act with the exception that the 1947 Act also explicitly requires the Insurance Commissioner, before granting a certificate of authority to do business in this State to any company, to be satisfied by proper evidence that such applicant for license is duly qualified to do business under the laws of this State; that it is safe and solvent; that its dealings are fair and equitable and that it conducts its business in a manner not contrary to the public interests. This is followed by the same proviso as in the 1944 Act.

Both the 1944 Act and the applicable Section of the 1947 Act are set out in full in the prevailing opinion, the portion of the 1947 Act setting out in detail the duty of the Insurance Commissioner as above outlined being shown in parenthesis, since such portion thereof has no applicability to the situation here. It was, of course, the duty of the Insurance Commissioner to make such investigation of an insurance company seeking to do business in this State prior to the 1947 Act.

There can be no question but that it was the duty of the Insurance Commissioner, before granting a license to the Florida Company to do business in this State, to search his records and ascertain if the name of the Florida Company was so nearly similar to that of any other insurance company then licensed as to lead to confusion and uncertainty, but this he failed to do, and by reason of such failure on

his part to check his records the Florida Company was licensed. In refusing to relicense the Florida Company (as a practical matter, revoking its license to do business in this State) the Insurance Commissioner stated in his order: "The record does not disclose that when the applicant company first applied to do business in South Carolina any opportunity was given the objector company to object to the issuance of its license, and, as a matter of fact, the applicant company's license was issued by the undersigned without notice to the objector company or any other company, due to the fact that the undersigned overlooked the fact that the objector company was doing business in South Carolina."

The Florida Company was equally negligent in obtaining a license to do business in this State under its corporate name because the 1944 statute was then in full force and effect and therefore it had notice that it was not entitled to, and could not be lawfully licensed in that name in this State. A search on its part of the records of the Insurance Commissioner would have disclosed that the South Carolina Company (under a similar name) was then licensed and doing business in this State.

It appears to me that the only fact in this case which can make difficult the decision arises from the failure of the Insurance Commissioner to forthwith and prior to the effective date, October 1, 1947, of the 1947 Act, revoke the license which he had issued to the Florida company. Instead, and in order to give the last mentioned company an opportunity to be heard, he did not set a hearing until March 8, 1948, at which time the Florida company appeared specially and took the position that the Insurance Commissioner had no jurisdiction, having theretofore granted it a license to do business; that he was precluded by the 1947 Act from inquiring into the effect of the similarity of the names of the insurance companies involved, and was without authority to then pass upon the question whether the two insurance companies' names were so nearly similar as to lead to confusion and uncertainty, and that it was only when the license was first

applied for that he had such a right. The objections cover a wider field than stated above, and also refer to the fact that the notice from the Insurance Commissioner was of a hearing to be held to determine whether the license of the Florida company would be renewed on April 1, 1948. But it is clear that the Florida company was fully advised that the hearing was to determine whether it had been lawfully licensed in 1947, and whether there should, in effect, be a revocation of such license.

In the proviso in both the 1944 and 1947 Acts it was undoubtedly the intent of the legislature to protect insurance companies which had theretofore been *lawfully* licensed, and not to validate the licensing of a company which had been unlawfully licensed, due to an error, or negligence on the part of the Insurance Commissioner, especially when such company had at least constructive knowledge of its situation.

When the objections of the Florida company to the hearing were overruled, it refused to participate therein, and withdrew. The Insurance Commissioner, after hearing the testimony on behalf of the South Carolina company, issued his order refusing to renew the license of the Florida company to do business in this State, which, as aforestated, for all practical purposes, amounted to a revocation of its license. In the order of the Insurance Commissioner, dated March 24, 1948, it is stated:

" .* * * the record shows numerous instances where mail directed to the applicant company was received by the objector company; instances where mail directed to the applicant company's branch offices in South Carolina, by the applicant company's Home Office in Florida was directed not by that company's full name, the Independent Life and Accident Company, but as Independent Insurance Company, and that some of those letters were actually received by the objector company. In many instances ordinary letters were addressed to the applicant company under name of Independent Insurance Company, other instances where it was

addressed to the applicant company not by its correct name but as Independent Life Insurance Company or Independent Insurance Company, Greenville, South Carolina, without any street or other address and that numerous letters so addressed were actually received by Independence Insurance Company, Greenville, S. C. the objector in this hearing.

"The record further shows that the average South Carolina policyholders of both companies are people of limited education, and much confusion has resulted because of the similarity of names. Both the objector company, Independence Insurance Company, and the applicant company, The Independent Life and Accident Insurance Company, do business in South Carolina, and there is detailed in the record numerous instances where money orders payable to the Independence Insurance Company were actually made out to Ind. Insurance Company, Independence Insurance Company, Indep. Insurance Company, and Indept. Life Insurance Company, which, in itself, shows that many people, who do business with the Independence Insurance Company actually call that company the Independent Insurance Company, which name easily fits the applicant company." His statement of the evidence and his conclusion thereabout is fully supported by the record.

If the names of the companies are so similar as to be confusing to the average man, this ought to be the test. I am also of opinion that the merits of the case are incidentally, but effectively before the Court.

To an extent repeating, it is my opinion that it was the intent of the legislature to protect insurance companies and the public in both the Acts, 1944 and 1947, where they had been regularly and *lawfully* licensed to do business in this State notwithstanding the similarity of names, but it was never the intent of the legislature in the passage of the 1947 Act to validate an unlawful licensing. The Florida company should not be permitted to take advantage of a privilege it acquired through an oversight, or by reason of the negligence

of the Insurance Commissioner, especially in the teeth of the Act of 1944, of which Act it had constructive knowledge.

The position is taken that having issued the Florida company license, the Insurance Commissioner had no lawful authority under the statute to inquire into the matter of whether the license previously granted was lawfully issued, and hence whether it should be renewed or revoked. It is clear to me that even without direct statutory authority the Commissioner would necessarily have this power by implication; in other words, in the order which he actually passed he made at least a quasi-judicial determination of the matter, and in such circumstances a writ of certiorari would normally be issuable under the well settled rule that when an inferior tribunal or commission acts in a judicial or *quasi*-judicial capacity, the Court may, on a writ of certiorari, review its findings, particularly with reference to matters of law. The Commissioner, of course, ordinarily acts in an administrative capacity, but he also necessarily sometimes performs judicial or quasi-judicial acts.

However, it seems to me that Section 7952 of the 1948 Code Supplement specifically provides that any order or decision made, issued or executed by the Insurance Commissioner shall be subject to review in the South Carolina Circuit Courts on petition filed within thirty days, etc. And this Section provides in considerable detail as to how such an appeal should be handled. An examination of the transcript of record clearly demonstrates that this Section was practically complied with in the matter before us and that this should settle this position adversely to the Florida company.

Sufficient facts are now before the Court for us to intelligently pass upon the merits of the issues in this case, and I can see no reason for reversing the ultimate holding of the Circuit Court, and compelling the South Carolina company to commence anew an action in a Court of Equity for the relief sought.

For the foregoing reasons, I respectfully dissent from the prevailing opinion.