17282

PAUL A. WALLACE, Respondent, v. J. H. WANNAMAKER, Appellant

(97 S. E. (2d) 502)

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer* and *Mc-Donald, McGowan & McDonald,* all of Florence, *for Respondent,*

April 9, 1957.

TAYLOR, Justice.

This appeal arises out of an action brought under Section 41-101, Code of Laws of South Carolina, 1952, in which respondent seeks to eject appellant from the premises upon which he is doing a retail gasoline and oil business.

A Rule to Show Cause in the instant controversy was issued by the Honorable J. J. Evans, Judge of the County Court of Marlboro County, who, thereafter, disqualified himself by reason of relationship with appellant; and, by agreement, the matter was transferred to the Court of Common Pleas of Marlboro County and tried as a proceeding in Magistrate's Court with six jurors, who found: First, that the transfer of gasoline to the Brigmans' trucking and farm accounts was within the terms of the lease; second, that such was a sale at the premises for which respondent had not received credit on the agreed rental and that such was done with the intent to deprive respondent of rent payments to which he was entitled under the lease. Appellant made timely motions to dismiss the Rule upon the ground that no rent was due and, later, for judgment *non obstante veredicto* upon the same and other grounds, which were denied.

It appears that on December 26, 1946, appellant leased from Daisy Sessions, *et al.,* one-fourth acre of land in Marlboro County for a period of fifteen years, commencing July 1, 1947, and ending June 30, 1962. The premises were to be developed and improved by appellant as a site for the distribution of petroleum products, appellant to advance the funds necessary for such improvements, which were to be not less than $3,500.00 and not more than $7,000.00, for the purpose of constructing and developing a building for such business. The appellant was to be reimbursed for such expenditures out of the first rents accruing, with interest at the rate of five per centum per annum, computed and payable monthly until appellant was reimbursed in full. The rental thereon was payable monthly, commencing on the date of completion of the improvements, based upon gallonage at the rate of one cent on each gallon of gasoline delivered to and sold each month; payment of the monthly rental to be made before the last day of each calendar month for the preceding calendar month, all rents to be reserved to appellant and applied by him until paid and thereafter to be paid to the owner of the premises.

The pertinent parts of said lease appear as follows:

"The said premises are to be developed, improved and used as a site for the distribution of petroleum products. Upon plans to be approved by William M. McQueen, of Clio, S. C., and John P. Bethea, of Columbia, S. C., acting for the Lessors, the Lessee is to advance the funds necessary, which are estimated to be not less than three thousand five hundred ($3,500.00) dollars nor more than seven thousand ($7,000.00) dollars, and is to construct the building and develop the property for such purpose, and be reimbursed out of the first rents accruing from said property for such advances, with interest on such advances from the date of completion of said building and development for the purpose aforesaid at the rate of five (5%) per centum per annum, computed and payable monthly in advance out of said rentals, until said Lessee is reimbursed and repaid in full.

"The Lessee agrees to pay as rent for the above described premises, commencing with the date of the completion of the development and improvement as aforesaid, a monthly rental of a sum based on gallonage, equal to one (1¢) cent for each gallon of gasoline delivered to and sold at the said premises each month. Payment of said monthly rental shall be made before the last day of each calendar month for the preceding calendar month; and said payments shall be reserved and applied by the Lessee to the payment of the advancements to be made by him as aforesaid, with interest thereon, till paid, and thereafter to be paid to the owner or owners of said premises."

The lease was duly recorded; and, subsequent thereto, respondent purchased the premises on October 11, 1948. The improvements thereon were completed at a cost of $6,968.38, and the service station began operation as of September, 1948. The sub-lessee, L. W. Brigman, Jr., and his father, L. W. Brigman, Sr., were engaged in operating a trucking business; and from this time until 1954, gasoline for the trucks used in such business was purchased directly from Midway Service Station, and the one cent per gallon paid as on all other gas passing through the pumps. By March, 1954, the trucking account had increased considerably; and the two Brigmans being also engaged in the farming business made arrangements with J. H. Wannamaker, Sr., to purchase gasoline used in the trucking and farming accounts at wholesale prices, the plan being that the gasoline when needed for either account was withdrawn from the pumps of the station in the same manner as other gas and a ticket made out therefor. At various times thereafter, the amount of gas withdrawn for this purpose would be replaced in the tanks of the Midway Service Station by the distributor, and a bill therefor in the amount of the tickets issued to the Brigmans. This practice continued until objection was registered by respondent in 1955, at which time it was determined that the quantity of gasoline used in the trucking and farming accounts for which no credit had been given respondent was

36,000 gallons which at the rate of one cent per gallon amounted to $360.00 which had not been credited as rent.

Section 41-101, Code of Laws of South Carolina, 1952, provides as follows:

"The tenant may be ejected upon application of the landlord or his agent when (a) such tenant fails or refuses to pay the rent when due or when demanded, (b) the term of tenancy or occupancy has ended or (c) the terms or conditions of the lease have been violated."

As will be seen by reference to provisions of the lease, heretofore referred to, all rent was assigned to appellant until the improvement account is paid in full, with interest. It is undisputed that after allowing respondent credit for the one cent per gallon on all disputed gasoline dispensed from the Midway Service Station through November 30, 1955, there remained a balance of $1,294.54. The proceedings in the instant case are purely statutory, and there obviously was no failure to pay the rent when due or demanded. The controversy appears to be more in the nature of a difference of opinion as to the amount that should be credited as rent; but considering it in the light most favorable to respondent, there was no rent due as the improvement account had not been retired. Respondent was entitled to credit of all rents on the improvement account; but under the terms of the lease, the rent itself was paid by way of improvements placed on the property, and the failure to give credit cannot under the circumstances be considered as failure or refusal to pay rent. The term of tenancy or occupancy has not ended, and there being no provision for forfeiture in the lease, respondent's action is purely statutory.

"The prime rule requires strict construction of a statutory provision which would work a forfeiture or inflict a penalty. *Independence Ins. Co. v. Independent Life & Acc. Ins. Co.*, 218 S. C. 22, 61 S. E. (2d) 399; 30 S. E. Dig. Statutes, Key No. 241, p. 881." *State ex rel. Callison v. National Linen Service Corp.*, 225 S. C. 232, 81 S. E. (2d) 342, 343.

For the foregoing reasons, we are of the opinion that the Court erred in not granting appellant's motion to dismiss the Rule upon the ground that no rent was due, that the judgment and Order appealed from should be set aside; and It Is So Ordered. Reversed.

STUKES, C. J., and OXNER and MOSS, JJ., and G. DUN-CAN BELLINGER, Acting Associate Justice, concur.